Andres F. Quintana (SBN 190525)
John M. Houkom (SBN 203240)
**QUINTANA LAW GROUP**
A Professional Law Corporation
26135 Mureau Road, Suite 203
Calabasas, California 91302
Telephone:(818) 914-2100
Facsimile: (818) 914-2101
E-mail: Andres@qlglaw.com
          John@qlglaw.com

Attorneys for Defendants and Counter-Claimants
CARAMEL SALES, LTD; DAVID POPECK, TET APS, and THOMAS
SCHMIDT

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VESTIS, LLC, aka VESTIS CALIFORNIA, LLC., a Nevada Limited Liability Company and; GINVE MODAS SL, a Spanish Limited Liability Company,<br><br>                    Plaintiffs,<br><br>          vs.<br><br>CARAMEL SALES, LTD, a United Kingdom Limited Company; DAVID POPECK; an individual; TET APS, a Denmark Limited Company; THOMAS SCHMIDT, an individual and DOES 1 to 50, inclusive<br><br>                    Defendants.<br><br>AND RELATED CROSS-COMPLAINTS AND CROSS-ACTIONS | CASE NO. 8:18−cv−02257−DOC−KES<br><br>**DISCOVERY MATTER**<br><br>**DEFENDANTS AND COUNTERCLAIMANTS' NOTICE OF MOTION AND MOTION FOR TERMINATING SANCTIONS, OR IN THE ALTERNATIVE, FOR EVIDENTIARY AND ISSUE PRECLUSION SANCTIONS**<br><br>**[Supporting Declarations and Exhibits filed concurrently herewith]**<br><br>**Hearing:**<br>Date:  October 29, 2019<br>Time:  10:00 a.m.<br>Courtroom:  6D, Santa Ana<br><br>Discovery Cut-Off:  November 18, 2019<br>Pre-Trial Conference:  February 10. 2020<br>Trial Date:  February 25, 2020 |

Quintana Law
Group, APC

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on October 29, 2019, at 10:00 a.m. in Courtroom 6D before the Honorable Karen E. Scott, located at 411 West Fourth Street, Santa Ana, California 92701, or as soon thereafter as the matter may be heard, Defendants and Counter-Claimants Caramel Sales, Ltd. ("Caramel Sales"), TET ApS ("TET"), David Popeck and Thomas Schmidt will and do move for an order under FRCP 37(b)(2)(A)(iii), (vi), and (viii), recommending and advising that District Court Judge David O. Carter should:

1.    Strike the Second Amended Answers of Cross-Defendants Vestis LLC, aka Vestis California LLC"s ("Vestis") and Gine Modas, SL's ("Ginve Modas) to the Second Amended Counterclaims of TET and Caramel Sales; and enter default and default judgment against Vestis and Ginve Modas on the Second Amended Counterclaims of TET and Caramel Sales, or in the alternative impose evidentiary and issue preclusion sanctions in connection with their defense on the Second Amended Counterclaims of TET and Caramel Sales;

2.    Dismiss the Complaint of Plaintiffs Vestis and Ginve Modas and enter judgment against them, or in the alternative impose evidentiary and issue preclusion sanctions in connection with their Complaint; and

Plaintiffs and Counter-Defendants Vestis and Ginve Modas have failed to comply with this Court's prior orders ordering them to:  Serve responsive documents to the Requests for Production of TET and Caramel Sales; serve supplemental discovery responses; and, pay over $30,000 in monetary sanctions. Defendants submit that the Plaintiffs and Counter-Defendants have and engaged in a pattern of blatant and unrepentant discovery violations which warrant the relief sought herein, and with their wanton violations of this Court's orders, only the relief sought herein would be sufficient to address Plaintiffs and Counter-Defendants' ongoing behavior.

Quintana Law
Group, APC

This Motion is based on this Notice of Motion, the attached Memorandum of Points and Authorities, the attached Declaration of Andres Quintana, and the [Proposed] Order filed concurrently herewith, and such other oral and/or documentary evidence or argument as may be presented prior to or at the time of hearing on this matter.

Finally, Defendants respectfully request that the Court order Plaintiffs and/or their counsel of record to pay sanctions in the amount of ninety-nine hundred and sixty dollars ($9,960.00) in connection with the filing of this Motion For Terminating Sanctions, *et al*.  Declaration of Andres Quintana, ¶¶44-47.

DATED: October 1, 2019            QUINTANA LAW GROUP
                                  A Professional Law Corporation


                                  By: /s/ Andres F. Quintana
                                  _____
                                  Andres F. Quintana, Esq.
                                  John M. Houkom, Esq.
                                  Attorneys For Defendants and Counter-
                                  Claimants TET ApS, Thomas Schmidt,
                                  Caramel Sales, Ltd. and David Popeck

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES..........................................4

I. ARGUMENT ...........................................................................................4

  A.  Summary of Discovery Proceedings, Prior Orders And Discovery Abuse ................................................................................................4

    1. Plaintiffs' Failure to Comply With the Court's September 19, 2019 Order....................................................................................................5

    2. Plaintiffs Failure to Appear For Depositions. ............................7

  B.  Applicable Legal Standards ...............................................................10

  C.  The Scope of Plaintiffs' Discovery Abuse ........................................12

    1. Plaintiffs' Incomplete Production of Relevant Emails..............13

    2. Other Missing Emails That Plaintiffs Failed To Produce .........15

    3. Plaintiffs' Incomplete Production of Relevant Bank Statement ...............15

    4. Plaintiffs' Incomplete Production of Text Messages. ...............16

    5. Plaintiffs' Incomplete Production of Corporate Contracts and Policies. ....................................................................................18

    6. Plaintiffs' Failure to Supplemental Responses. ........................19

  D.  The Ninth Circuit's Balancing Test Weighs Strongly In Favor Of Terminating Sanctions In This Case Because Plaintiffs Willfully Disobeyed Multiple Court Orders ........................................................19

    1. The First two Ninth Circuit Factors Weigh Heavily In Favor Of Terminating Sanctions ...................................................................21

    2. The Third Ninth Circuit Factor Weighs Heavily In Favor Of Terminating Sanctions ...................................................................22

    3. The Fourth Ninth Circuit Factor Weighs Against Terminating Sanctions But Is Not Dispositive ..................................................24

4. The Fifth Ninth Circuit Factor Weighs Heavily In Favor Of
Termination Sanctions ................................................................... 25

E. Alternatively, This Court Should Impose Issue And Evidentiary
Sanctions ........................................................................................ 27

F. Monetary Sanction In Connection With this Motion ..................... 28

II. CONCLUSION ........................................................................................ 28

1

# TABLE OF AUTHORITIES

2

3 <u>FEDERAL CASES</u>

4
5
*Adriana Int'l Corp. v. Thoeren*
     913 F.2d 1406 (9th Cir.1990) ...................................................11, 22, 25

6
7
*Ahearn v. Redondo Beach Police Dep't*
     2009 WL 728463 (C.D. Cal. Mar. 18, 2009).......................................10

8
9
*City of Colton v. Am. Promotional Events, Inc.*
     2012 WL 13013379 (C.D. Cal. Mar. 22, 2012)............................ 11-12

10
11
*Computer Task Group, Inc. v. Brotby*
     364 F.3d 1112 (9th Cir.2004) ....................................................20, 23, 26

12
13
*Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*
     482 F.3d 1091 (9th Cir.2007) ...................................... 10-11, 21, 25, 26

14
15
*Dreath v. Nu Image, Inc.*
     648 F.3d 779 (9th Cir.2015)  ........................................... 20, 21, 22, 24

16
17
*Faerfers v. Caviar Creator, Inc.,*
     2009 WL 4912367 (9th Cir. Nov.16, 2009) .......................................11

18
19
*Fair Housing of Marin v. Combs*
     285 F.3d 899 (9th Cir.2002) ..................................................................20

20
21
*Gibson v. Chrysler Corp.*
     261 F. 2d 927 (9th Cir. 2001)  ...........................................................12

22
23
*Gutman v. Klein*
     2008 WL 4682208 (E.D.N.Y. Oct. 15, 2008) .............................. 26-27

24
25
*Henry v. Gill Indus., Inc.*
     983 F.2d 943 (9th Cir.1993) ..................................................................20

26
27
*Hernandez v. City of El Monte*
     138 F.3d 393 (9th Cir.1998) ..................................................................11

28

*In re Exxon Valdez*
    102 F.3d 429 (9th Cir.1996) ................................................................25

*In re Phenylpropanolamine*
    460 F.3d 1217 (9th Cir.2002) ........................................ 19-20, 22, 25

*Malone v. U.S. Postal Serv.*
    833 F.2d 128 (9th Cir.1987) ...............................................................21

*Nacco Materials Handling Group, Inc. v. Lily Co.*
    278 F.R.D. 395 (W.D. Tenn. 2011) .....................................................28

*Rio Properties, Inc. v. Rio Int'l Interlink*
    284 F.3d 1007 (9th Cir.2002) .............................................................25

*Roadway Express, Inc. v. Piper*
    447 U.S. 752, 100 S. Ct. 2455, 65 L.Ed. 2d 488 (1980)....................10

*State Farm Fire and Cas. Co. v. Broan Mfg. Co. Inc.*
    523 F.Supp.2d 992 (D. Ariz. 2007) ....................................................27

*Treppel v. Biovail Corp.*
    249 F.R.D. 111 (S.D.N.Y. 2008) ........................................................28

*Valley Eng'rs, Inc. v. Elec. Eng'g Co.*
    158 F.3d 1051 (9th Cir.1998) .............................................................11

*Yourish v. California Amplifier*
    191 F.3d 983 (9th Cir.1999) ...............................................................21

FEDERAL STATUTES AND REGULATIONS

Federal Rule of Civil Procedure 37(b)(2).................................. 10, 11, 19, 27

Quintana Law
Group, APC

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiffs and Cross-Defendants Vestis LLC, aka Vestis California LLC ("Vestis") and Ginve Modas, SL ("Ginve Modas", or collectively, "Plaintiffs"), the initiators of this lawsuit, have engaged in a clear pattern of discovery abuse in this case, including the brazen violation of this Court's most recent discovery orders, simply failing to deliver any of the responses, documents or sanctions ordered by this Court on September 19, 2019. While that is the most obvious recent example of Plaintiffs' abuses, it is far from the only one. Indeed, Defendants and Counter-Claimants Caramel Sales, Ltd. ("Caramel Sales"), TET ApS ("TET"), David Popeck and Thomas Schmidt (collectively "Defendants") submit that the Plaintiffs' pattern of behavior in disregarding their discovery responsibilities justifies the relief sought herein – terminating sanctions – since only that sanction would actually act to relieve the prejudice to the Defendants the Plaintiffs' actions have caused.

That relief is well within the scope of the remedies available to this Court, and this case is an excellent example of when that measure should be employed. Lesser remedies have failed to curtail Plaintiffs' discovery abuses, which are only growing more defiant and extreme, and the Court should exercise its discretion in granting the relief sought in the instant motion.

## I.  ARGUMENT

### A. Summary Of Discovery Proceedings, Prior Orders And Discovery Abuse.

Plaintiffs have repeatedly violated their discovery obligations, including their obligation to preserve relevant evidence, throughout the course of this case, and now are brazenly violating this Court's discovery orders. Their failings are legion.

Months before Plaintiffs initiated this lawsuit, Plaintiffs were aware that litigation with the Defendants was forthcoming. On June 1, 2018, Morgan Recchia, as the Managing Member of Vestis, forwarded an email from his father, Serge Recchia, the owner of Ginve Modas, to the President and owner of third-party Quetico, LLC in which Recchia wrote, among other things,

1     I will very quickly settle this commercial dispute with TET.

2     And inform him of the acts committed by his broker (David

3     [Popeck]). [¶] For several months I have compiled a file of

4     +200 pages on David [Popeck] and his actions to transmit them

5     to my judicial relations. [¶] I will take the legal steps to put

6     everyone in from of their responsibilities, I am talking TET,

7     DAVID [Popeck] and US.

8 Declaration of Andres Quintana ("Quintana Decl."), ¶42, Exh. AV.  Therefore, both

9 Serge Recchia and Morgan Recchia knew, ***at the latest*** on June 1, 2018, that

10 litigation between the parties in this case was reasonably foreseeable.  Further, on

11 June 18, 2018, the Defendants received a "cease and desist" correspondence from

12 the Plaintiffs' California attorney, Gerard J. Soussan, Esq.  Quintana Decl., ¶41,

13 Exh. AW.  Thus, ***by no later than June 18, 2018***, Plaintiffs had already retained

14 California counsel and thereby must have known they were under a duty to preserve

15 evidence which they knew or reasonably should have known was relevant to the

16 action to an action against the Defendants.

17     On September 20, 2018, Plaintiffs Vestis and Ginve Modas initiated this

18 matter in the Superior Court for the State of California, in Orange County, asserting

19 claims against the Defendants, and others, based on the purported breach of a non-

20 disclosure agreement related to the Plaintiffs' purported "trade secrets."  On

21 December 19, 2018, Defendants removed this case to Federal Court, based on

22 diversity of jurisdiction.  Dkt. 1.  On January 15, 2019, the Defendants answered the

23 Complaint, and filed and served their Counterclaims, naming the Plaintiffs, along

24 with Counter-Defendants Morgan Recchia and Serge Recchia.  Dkt. 12.

25     Both the Plaintiffs and the Defendants then promptly began discovery,

26 serving their first rounds of written discovery in early February of 2019.

27     **1. Plaintiffs' Failure to Comply With the Court's September 19,**

28        **2019 Order.**

1   The Plaintiffs almost immediately engaged in a pattern of stonewalling and

2   gamesmanship by repeatedly asserting inapplicable, boilerplate objections, failing

3   and, in some instances simply refusing, to produce relevant, discoverable evidence,

4   and generally delaying and drawing out the discovery process for no apparent

5   purpose other than to vex the Defendants and force them to incur otherwise

6   unnecessary fees and costs in this case.

7   Faced with that pattern of behavior, Defendants had no choice but to file four

8   Motions to Compel against Plaintiffs during the period of May 31, 2019 through

9   July 10, 2019.  Dkts. 57, 58, 70, 75.

10   As described in the text of the Court's September 19, 2019, Discovery Order

11   (Dkt. 122), this Court held multiple Telephonic Hearings regarding these Motions

12   and other discovery issues, beginning on July 18, 2019, and through August 26,

13   2019.  *Id.* at pp. 3-5.  During the time, the Court ordered that Vestis and Ginve

14   Modas to serve supplemental responses and responsive financial information sought

15   by Defendants.  For example, Plaintiffs were ordered to turn over bank statements,

16   because, among other things, the Court found that Defendants were entitled to trace

17   where their funds went once they were in the possession of Vestis and Ginve

18   Modas, and that concerns regarding the sensitive nature of the information therein

19   were mooted by the existence of a protective order entered in this case.

20   Unfortunately, Plaintiffs repeatedly failed to comply with various interim orders and

21   instructions from this Court, leaving the Defendants without access to critical

22   evidence despite their best efforts.

23   Finally, during the Telephonic Hearing held on August 26, 2019, the Court

24   ordered that a full and complete production of the documents requested by

25   Defendants and Counter-Claimants be made by Vestis and Ginve Modas, including

26   the production of text messages, emails (in both native and portable document

27   format ("PDF") formats), written policies, and financial statements, and any written

28   contracts.  Dkt. 122.  In the interim, the Court took Defendants and Counter-

1  Claimants' request for sanctions portion under submission.  *Id*.

2      Then, on September 19, 2019, the Court issued its substantive written order in

3  which Plaintiffs Vestis and Ginve Modas were ordered to provide certain

4  supplemental discovery responses, were ordered to produce documents in certain

5  categories, and were ordered to pay monetary sanctions to the Defendants in the

6  amount of $30,906.00.  Dkt. 122. The Court also ordered Plaintiffs to provide the

7  supplemental responses, produce the documents, and pay the sanctions within seven

8  days, *i.e.*, by no later than September 26, 2019.  *Id*.

9      As of the date and time of the filing of this Motion, which is after the

10  September 26, 2019, deadline for compliance, Plaintiffs have not complied with the

11  Court's September 19, 2019 Order.  Quintana Decl., ¶43.  To be clear, Plaintiffs

12  violated the September 19, 2019 Order in all material aspects.

13  ### 2.  Plaintiffs Failure to Appear For Depositions.

14      Plaintiffs also continue to defy the Court's instructions and have failed to

15  appear for noticed depositions.  Defendants initially noticed the deposition of the

16  Rule 30(b)(6) designee of Vestis and Ginve Modas, Serge Recchia and Morgan

17  Recchia back on March 28, April 1, April 17 and April 18, 2019, almost *five*

18  *months* ago.  Quintana Decl. ¶2, Exh. A, B, C, D.  Plaintiffs refused to appear and

19  provide alternative dates, for months.  Quintana Decl. ¶¶3-13; Exhs. G, H, I, J, K, L,

20  M, N, O, P.  Finally, on June 10, 2019, after Defendants were forced to send a Joint

21  Stipulation pursuant to the Local Rules in order to proceed with a Discovery Motion

22  on this issue, and after multiple exchanges with Plaintiffs' counsel regarding

23  available deposition dates, Plaintiffs finally provided deposition dates for the

24  Depositions of Plaintiffs and the Recchias.  Quintana Decl. ¶14, Exh. R.  Defendants

25  served proper deposition notices for dates that Plaintiffs had previously stated they

26  were available.  Quintana Decl. ¶15, Exhs. S, T, U, V.  Specifically, Plaintiffs had

27  an obligation to produce the following persons for deposition dates of (1) September

28  4, 2019, Plaintiff Vestis's 30(b)(6) corporate designee; (2) September 5, 2019,

Morgan Recchia, Counter-Defendant and managing member of Plaintiff Vestis; (3) September 6, 2019, Serge Recchia, Counter-Defendant and managing member of Plaintiff Ginve Modas; and (4) September 17, 2019, Plaintiff Ginve Modas's (30(b)(6) corporate designee. *Id.*

More than *two months after* those depositions were set on dates that the *Plaintiffs* proposed, and less than three weeks before the first deposition was to commence, on August 16, 2019, Plaintiffs' counsel announced that the Plaintiffs would not appear for the depositions as noticed, without offering any alternative dates. Quintana Decl. ¶16, Exh. W. That missive was timed in such a way to prevent Defendants from filing a regularly-noticed motion to compel on that issue, leaving Defendants no option but to seek an order directing the Plaintiffs and their personnel to appear for their noticed depositions through an *Ex Parte* Application. That *Ex Parte* Application was filed on August 21, 2019. Dkt. 97.

The Court granted Defendants and Counter-Claimants' *Ex Parte* Application in part (Dkt 107). During the hearing on the *Ex Parte* Application on August 26, 2019, the Court directed the Plaintiffs to provide ten available deposition dates in September and October of 2019. Quintana Decl., ¶18. On the day those proposed deposition dates were due, Plaintiffs offered the last day of September, and nine dates in October. Quintana Decl., ¶19, Exh. X. That same day, August 30, 2019, the Defendants served notices for the depositions of the four deponents on dates offered by the Plaintiffs for that purpose, noticing depositions on September 30, 2019, and October 1 and 2, 2019. Quintana Decl., ¶20, Exhs. Y, Z, AA, AB.

With that intervention by the Court, Defendants had hoped that Plaintiffs' discovery gamesmanship would finally come to an end. Defendants were wrong.

On September 12, 2019, Plaintiffs filed an *Ex Parte* Application, seeking an order continuing **all four** of the noticed depositions, based on purported damage to the passport of Morgan Recchia. Dkt. 115; Quintana Decl., ¶23. In other words, only Morgan Recchia was purported to be incapable of attending the depositions on the dates noticed. Serge Recchia's travel documents were not alleged to be

unavailable, and there was no legitimate reason why he could not appear for his deposition as noticed.  Plaintiffs contended that he would have *preferred* to travel with Morgan Recchia, but there is no reason presented why Serge Recchia could not attend with any other person, or, indeed, travel by himself, as a healthy, 66-year-old man with his full faculties.  Later that same day, Defendants filed their Opposition to the *Ex Parte* Application, declaration in support of their Opposition and Evidentiary Objections.  Dkts. 116, 117, 117-1.

On September 13, 2019, the Court denied Plaintiff Vestis' *Ex Parte* Application, stating

> It is implausible to the Court that a French citizen abroad (i.e., in Spain) cannot get a damaged passport replaced to permit international travel (such as returning to France) in less than 1.5 months. As Morgan Recchia's declaration makes clear, he has not visited the French consulate or attempted to obtain a replacement passport yet. He assumed that he needed to wait until he obtained a certified birth certificate, and the basis for his assumption on that point is unclear (particularly when the consulate's website says otherwise).

> IT IS HEREBY ORDERED that the ex parte application is DENIED. The Court strongly suspects that Morgan Recchia will be able to obtain a replacement passport in time to travel to the United States for his duly noticed deposition, in a forum chosen by Plaintiffs, if motivated to do so.

Dkt. 118.  In other words, the Plaintiffs remained obliged to appear for their noticed depositions on September 30, 2019, and October 1 and 2, 2019.

Then, on the afternoon of Thursday, September 26, 2019, two business days before the first of those depositions was to commence (and only after further inquiry by Defendants) counsel for the Plaintiffs informed counsel for the Defendants that the Plaintiffs and Counter-Defendants would not be appearing for their noticed depositions.  Quintana Decl., ¶25, Exh. AE. In the end, Plaintiffs, Serge Recchia and Morgan Recchia did not show up for their noticed depositions, despite previously offering those dates for that purpose, being admonished by the Court to appear for

1  their noticed depositions, and having their *Ex Parte* Application to continue the
2  depositions denied by this Court.  Quintana Decl., ¶25.

3      Defendants now bring this motion seeking terminating sanctions, or in the
4  alternative, evidentiary sanctions against Plaintiffs for the prejudice they have
5  caused to Defendants' case through their repeated discovery failures and abject
6  refusal to comply with this Court's discovery orders.

7  **B. Applicable Legal Standards.**

8      Under Federal Rule of Civil Procedure 37(b)(2), the Court may impose
9  sanctions against a party that fails to comply with a court order, including "(ii)
10  prohibiting the disobedient party from supporting or opposing designated claims or
11  defenses, or from introducing designated matters into evidence; (iii) striking
12  pleadings in whole or in part; ... (v) dismissing the action or proceeding in whole or
13  in part; [or] (vi) rendering a default judgment against the disobedient party".  Fed.
14  R. Civ. P. 37(b)(2)(A)(ii)-(vi).  These particular sanctions can also be applied when
15  a party fails to disclose or supplement an earlier discovery response as required by
16  Rule 26(a) or (e), or when a party fails to attend a deposition, serve answers to
17  interrogatories, or respond to inspection requests. *See* Fed. R. Civ. P. 37(c)(1)(C)
18  [noting that a court "may impose other appropriate sanctions, including any of the
19  orders listed in Rule 37(b)(2)(A)(i)-(vi)].  The Court also has the inherent power to
20  sanction a party for discovery abuse. *See Roadway Express, Inc. v. Piper*, 447 U.S.
21  752, 764-65, 100 S. Ct. 2455, 65 L.Ed. 2d 488 (1980).

22      The Ninth Circuit has articulated a five-part "test" to "provide[ ] the district
23  court with a way to think about what to do" with respect to terminating sanctions.
24  *Ahearn v. Redondo Beach Police Dep't*, No. CV 07-1452-AHS, 2009 WL 728463,
25  at *6 (C.D. Cal. Mar. 18, 2009). "A terminating sanction, whether default judgment
26  against a defendant or dismissal of a plaintiff's action, is very severe" and only
27  justified upon a showing of "willfulness, bad faith, and fault." *Conn. Gen. Life Ins.*
28  *Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1096 (9th Cir.2007). In

1  considering whether a case-dispositive sanction is justified, a court must consider:

2  (1) the public's interest in expeditious resolution of litigation; (2) the court's need to

3  manage its docket; (3) the risk of prejudice to the party seeking sanctions; (4) the

4  public policy favoring disposition of cases on their merits; and (5) the availability of

5  less drastic sanctions." *Id*.

6        Notwithstanding "all this elaboration of factors," the Ninth Circuit has said

7  that "it is not always necessary for the court to impose less serious sanctions first, or

8  to give any explicit warning." *Valley Eng'rs, Inc. v. Elec. Eng'g Co*., 158 F.3d 1051,

9  1057 (9th Cir.1998)(internal citations omitted).  However, the risk of prejudice to

10  the moving party and the availability of lesser sanctions are arguably the most

11  important factors to be considered. *See Adriana Int'l Corp. v. Thoeren*, 913 F.2d

12  1406, 1412 (9th Cir.1990)("[T]he first two factors support sanctions and the fourth

13  factor cuts against default. Therefore, it is the third and fifth factors that are

14  decisive."). Generally, in order to grant terminating sanctions, the Court must find at

15  least four factors supporting dismissal or at least three factors "strongly" supporting

16  such sanctions. *See Faerfers v. Caviar Creator, Inc*., No. 08–16339, 2009 WL

17  4912367, at *1 (9th Cir. Nov.16, 2009)(*citing Hernandez v. City of El Monte*, 138

18  F.3d 393, 399 (9th Cir.1998)).

19        Alternatively, under Federal Rule of Civil Procedure 37(b)(2)(A)(ii), once a

20  Court Order is violated, the Court has the authority to prohibit the disobedient party

21  from supporting or opposing designated claims or defenses, or from introducing

22  designated matters in evidence. Further, under Rule 37(b)(2)(A)(i), the court may

23  direct that the matters embraced in the order or other designated facts be taken as

24  established for purposes of the action, as the prevailing party claims.  Both of these

25  remedies are sanctions for violation of a Court Order. More important, "[t]hey do

26  not involve or require any weighing of the actual facts related to the issues to be

27  deemed established.  *City of Colton v. Am. Promotional Events, Inc*., No. CV 05-

28  01479 JFW (EX), 2012 WL 13013379, *13 (C.D. Cal. Mar. 22, 2012).  Rather, they

1   are based on "the reasonable assumption that the party resisting discovery is doing
2   so because the information sought is unfavorable to its interest." *Id*. (*citing Gibson*
3   *v. Chrysler Corp*., 261 F. 2d 927, 948 (9th Cir. 2001). "In such a case, the sanction
4   merely serves as a mechanism for establishing facts that arc being hidden by the
5   party resisting discovery." *Id*.

6          As laid out in detail below, the factors to be considered by this Court heavily
7   favor the grant of relief sought by the Defendants in the instant motion.    The
8   public's interest in expeditious resolution of litigation has been undermined by the
9   Plaintiffs' stonewalling of discovery, preventing the Court from efficiently
10  managing its docket, and causing severe risk of prejudice to the Defendants, who are
11  being prevented from resolving this case on their merits by Plaintiffs willful,
12  wrongful acts.  Finally, less drastic sanctions would not resolve these issues:  They
13  have been attempted in the past in this case with no change in the Plaintiffs' pattern
14  of abuse.  Therefore, the relief sought should be granted, in its entirety.

15  **C. The Scope of Plaintiffs' Discovery Abuse.**

16          Plaintiffs Vestis and Ginve Modas' apparent discovery strategy throughout
17  this litigation has been to delay, deny, and eventually deficiently produce a few
18  responsive documents.  These unfair practices have cost Defendants thousands of
19  dollars in motion practice, and yet Plaintiffs <u>still</u> fail and refuse to produce all
20  relevant non-privileged documents requested during the course of discovery.

21          The crux of Defendants' Counterclaims is that they were scammed by Vestis
22  and Ginve Modas, and their owners, Morgan and Serge Recchia from May of 2017
23  to approximately mid-September 2017, through the use of coordinated lies,
24  fabricated shipping, insurance and customs documents, and ongoing fraudulent
25  promises.  Through their scheme, Plaintiffs and their owners stole over one Million
26  Euros (€1,000,000) from the Defendants – monies they have still not returned, the
27  location of which remains unknown.  Here, the Plaintiffs have obstructed discovery
28  to attempt to delay a determination of this dispute on the merits, and to increase the

1  costs and expenses incurred by the Defendants, whatever they can think of to delay,

2  deny and obstruct, to buy themselves a little more time with the Defendants' money.

### 1. Plaintiffs' Incomplete Production of Relevant Emails.

4  During the July 18, 2019, telephonic hearing (and as was reiterated during the

5  August 6, 2019 telephonic hearing) Plaintiffs' counsel admitted that (1) Plaintiffs

6  had failed to produce a significant number of the emails transmitted between

7  Plaintiffs, on the one hand, and Defendants, on the other hand, and (2) Plaintiffs had

8  produced multiple emails in PDF format only, rather than native format, as agreed

9  by the parties in their Rule 26 conference and thereafter.  Plaintiffs have still not

10  cured those deficiencies, despite the Court ordering them to do so.

### a. Native File Emails With Metadata.

12  First, there are dozens of emails that Plaintiffs produced on April 23, 2019, in

13  PDF format but not produced in native format, which the Plaintiffs have still not

14  produced in native format, (i) despite this Court ordering them to do so (Dkt. 122);

15  and (ii) despite the existence of these emails in native format.  This was made

16  painfully obvious when Plaintiffs failed to produce nearly two dozen specific,

17  relevant emails, which Plaintiff Vestis later stipulated were "genuine".  Quintana

18  Decl., ¶34; Exh. AK [Joint Stipulation Regarding The Genuineness And

19  Authenticity of Documents].  Specifically, it was only after Defendants served a

20  subpoena on Google that Plaintiff Vestis would agree to authenticate certain emails

21  that originated from Plaintiff Vestis' gmail account and that were produced by

22  Defendants in this case but *not produced* by Plaintiff Vestis in response to the RFPs.

23  *Id.*  According to the Joint Stipulation Regarding The Genuineness And Authenticity

24  of Documents ("Authenticity Joint Stipulation"):

25  Plaintiff Vestis **has reviewed its records** and confirmed that

26  each of the emails attached hereto as Stipulation Exhibits "1"

27  through "23" was in-fact sent by Plaintiff Vestis, by an agent or

28  employee of Plaintiff Vestis, from the email address

vestisllc@gmail.com, to the recipients shown on the face of the Exhibit, at the approximate time shown on the face of the Exhibit, and with the same attachments, if any, shown on the face of the Exhibit.  Further, Plaintiff Vestis has confirmed that the content of each of the emails and attachments attached hereto as Stipulation Exhibits "1" through "23," accurately reflects the content of those emails and attachments as sent in-fact by Plaintiff Vestis.  **Plaintiff confirms that the emails and attachments attached hereto as Stipulation Exhibits "1" through "23," are true, genuine and authentic paper copies of the original electronic version of those documents**.

Quintana Decl., ¶34; Exh. AK (emphasis added).

As the Court can see, in order to attest to the genuineness of each of the emails produced by Defendants, Plaintiff Vestis asserted that it compared each of the emails attached to the Authenticity Joint Stipulation with their digital originals, and yet those digital emails were still *not produced*, either in their native format as promised, or in any other format, by the Plaintiffs, despite (a) being requested in proper RFPs, (b) within the possession, custody or control of the Plaintiffs, and (c) being unprivileged communications with third parties relevant to many of the claims and defenses in this case and therefore discoverable.

The question almost asks itself:  If Plaintiffs were bold enough to withhold and fail to produce those highly-relevant, discoverable documents, which Defendants knew of because they were copied on the original transmissions, then what other relevant, responsive, discoverable documents the Plaintiffs have failed and refused to produce are the Defendants unaware of?

On August, 21, 2019, Defendants filed a Status Report in which they attached thereto <u>Appendix 1</u>, a chart compiled by the Defendants after a close review of the Plaintiffs' document productions, identifying each of those emails, by description and (Plaintiffs') Bates numbers, that the Plaintiffs produced in PDF format but

1   which could not be located in the Plaintiffs' production in native format.  *See* Dkt.

2   95.  As of the date this Motion, Plaintiffs have not produced any of the documents

3   identified in Appendix 1.  Quintana Decl., ¶43.

4              **2.  Other Missing Emails That Plaintiffs Failed To Produce**.

5              Second, there are many emails that were sent to or received by Plaintiffs that

6   have never been produced by them in *either* PDF format or native format.  In other words, despite

7   notwithstanding the Court's order that they be produced.  In other words, despite

8   being responsive to various RFPs, Plaintiffs continue to fail and refuse to produce

9   more than *one hundred and fifty emails*, in violation of Court order.  *See* Dkt. 122.

10  To that end, Defendants also attached to their Status Report a documents entitled

11  Appendix 2, which contained a chart compiled by the Defendants after a close

12  review of the Plaintiffs' document productions, identifying each of the emails

13  Defendants have produced to date, but which could not be located in the Plaintiffs'

14  production, by description and (Defendants') Bates numbers. Dkt. 95. Of course,

15  those are only the emails Defendants have been able to identify to date.  The Court

16  incorporated Appendix 2 into its September 19, 2019 Order.  Dkt. 122.

17             The abject failure of the Plaintiffs to make a full and complete production, or

18  even a production in the proper format, is well documented, and cannot stand.

19             **3.  Plaintiffs' Incomplete Production of Relevant Bank Statements**.

20             The Court's admonished the Plaintiffs at the July 18, 2019, telephonic hearing

21  that responsive financial information sought by the Defendants, including bank

22  statements, must be produced (albeit subject to the Protective Order entered in this

23  case), because, among other things, the Defendants are entitled to trace where their

24  funds went once they were in the possession of the Plaintiffs.  Nonetheless, the

25  Plaintiffs have produced *no* bank statements of Vestis, and produced *no* evidence of

26  what was done with those funds after they were supposedly sent to Plaintiffs.

27  Quintana Decl., ¶43.

28             In regard to Plaintiff Ginve Modas, specifically, the production was patently

evasive and incomplete.  For example, Plaintiffs produced a single printout from the bank, Banco Bilbao Vizcaya Argentaria S.A. ("BBVA"), purportedly for the period of June 19, 2017 through October 18, 2017, despite the fact that the Court ordered the production not be limited to a specific time period.  Similarly, the BBVA statement contains no indication of which entries relate to the Defendants or their funds.  Nor does that statement indicate where the Defendants' funds went.

Likewise, the other apparent "bank" information (a single PDF document called "Ginve modas sl banking Caixa abril 2017 – October 21, 2017") is equally insufficient.  First, the source of this document is unclear as the name of any financial institution is not readily apparent on the document itself.  To the extent Plaintiffs claim that this statement originated from an institution named "Caixa" (based on the PDF's name), the name "Caixa" does not appear anywhere on the document.  Further, this "Caixa" document appears to be for the period of April 12, 2017 through October 17, 2017, despite the fact that the Court Ordered production not be limited to a specific time period.  Similarly, this "Caixa" document contains no indication of which entries relate to the Defendants or their funds.  Nor does that statement indicate where the Defendants' funds went.

In other words, even the sparse and incomplete bank information that the Plaintiffs have produced is facially deficient and incomplete, and so much so that it is impossible to determine the money trial.  Again, Plaintiffs have already conceded that they received funds from Defendants for goods that were never shipped.  Defendants are entitled to know where their funds went.

### 4. Plaintiffs' Incomplete Production of Text Messages.

In addition, above and beyond the emails there were also multiple WhatsApp text messages between the Plaintiffs, and their personnel, and the Defendants, which were and remain responsive to multiple RFPs.  Quintana Decl., ¶36; Exhs. AO, AP [examples of WhatApps text messages between (a) Defendants and Morgan Recchia of Vestis and (b) Defendants and Serge Recchia of Ginve Modas that Plaintiff failed

to produce].   Yet the Plaintiffs' production *did not* include any WhatApp text messages with Defendants and limited text messages between Plaintiffs and their personnel exchanged with each other or third parties.  Quintana Decl., ¶36.

In other words, there is significant and compelling direct evidence that Plaintiffs' document production to date is woefully incomplete, but there is indirect evidence of that fact as well.

For example, despite requesting documents for the entire relevant period, which included 2017, when much of the relevant activity occurred, there appear to be no emails or other documents in the Plaintiffs' production which were sent by Plaintiff Ginve's owner, Serge Recchia, despite his multiple contacts with the Defendants and other relevant witnesses.  Attached to the Quintana Declaration as Exhibit AQ are examples of emails received by Defendants, and produced by Defendants in this case, that appears to have originated from Serge Recchia of Plaintiffs Ginve Modas.   None of these emails were produced by Plaintiffs. Quintana Decl. ¶37.

For another example, there are scores of emails produced by Defendants in this case which appear to have originated from Morgan Recchia of Plaintiffs Vestis, but that were not produced by Plaintiffs.  Attached to the Quintana Declaration as Exhibit AR are examples of these emails received by Defendants, but not produced by Plaintiffs.  Quintana Decl., ¶38.

It is apparent, then, that the production that the Plaintiffs have made so far in this case is incomplete, even woefully so, and further that Plaintiffs have, to date, failed and refused to produce numerous responsive documents, electronic and otherwise, that are relevant to the claims and defenses in this case, and which were properly demanded in Defendant's Requests for Production.

Despite the Court specifically addressing text messages during the July 18, 2019, telephonic hearing, and ordering Plaintiffs to produce responsive text messages, Plaintiffs have:  (1) Produced no text messages between Morgan Recchia of Vestis LLC and Thomas Schmidt (despite Defendants previously producing

same); and (2) Produced no text messages between Morgan Recchia of Vestis LLC and David Popeck (despite Defendants previously producing evidence that those individuals were texting before that date and did so extensively in 2017);

The only such documents Plaintiffs did produce were a handful of text messages between (1) Thomas Schmidt and Serge Recchia, and (2) David Popeck and Serge Recchia.  The text messages produced between David Popeck and Serge Recchia are particularly remarkable because it seems as if Plaintiffs intentionally omitted text messages that were exchanged during the key points in the 1.1 Million Euro transaction and subsequent cover-up – *ie*, from April 1, 2017 through September 14, 2017 – when funds were transferred to Plaintiffs, when the Plaintiffs made false promises about the supplier and shipment of the goods, and when Plaintiffs transmitted fabricated documents and emails to the Defendants.

In other words, instead of ***all*** responsive messages, Plaintiffs only produced the text messages between David Popeck and Serge Recchia of Ginve Modas that covered March of 2017, one message on December 25, 2917, and then messages between May 30, 2018 and mid-June of 2018.  Plaintiffs production indicates that they do have access to text messages, but have simply chosen not to produce the vast bulk of the messages sought in discovery, despite their relevance.

### 5. Plaintiffs' Incomplete Production of Corporate Contracts and Policies

Finally, also discussed at the July 18, 2019, hearing was the Defendants' demands for the production of relevant contracts, written corporate policies, and other basic documentation relevant to the claims and defenses in this case.  During the hearing, the Court overruled the objections to the relevant RFPs, and directed the Plaintiffs to produce the requested documents (narrowed in some instances by concessions offered by the Defendants).  Again, August 19, 2019, came and went and none of those documents were produced by the Plaintiffs.  Then, on September 19, 2019, the Court again ordered Plaintiffs to produce these documents.  Dkt. 122.

Plaintiffs have again defied the Court's order and have failed to produce these documents, even though Plaintiffs have admitted through Responses to Request for Admissions that such documents exist.  Quintana Decl., ¶39, Exhs. AS, AT.

While this issue would be a sufficient basis in and of itself to sanction the Plaintiffs for their continuing dilatory behavior, it is just one instance in an unbroken line of violated orders, abject failures to comply with discovery obligations, and general gamesmanship apparently intended to vex and frustrate the Defendants, while also increasing the cost of this litigation for no good purpose.

### 6.  Plaintiffs' Failure to Supplemental Responses.

As of the date and time of this Motion, Plaintiffs have not produced a single set of the supplemental responses ordered by the Court.  During the July 18, 2019, telephonic hearing, this Court overruled almost every objection raised by Plaintiffs and Ordered them to supplement their responses. Dkt. 122.  During the August 6, 2019 discovery telephonic hearing, Plaintiffs' counsel acknowledged that the supplemental responses had not been produced, claiming it was due to deficient note-taking by the Plaintiffs' counsel.  *Id*.  Having been admonished by the Court to provide those supplemental responses, Plaintiffs failed and refused to do so, and those supplemental responses have still not been served.

### D. The Ninth Circuit's Balancing Test Weighs Strongly In Favor Of Terminating Sanctions In This Case Because Plaintiffs Willfully Disobeyed Multiple Court Orders.

When a party disobeys a discovery order, Federal Rule of Civil Procedure 37 provides several sanctions options, including terminating sanctions. Rule 37 allows the Court to strike an offending party's pleading, dismiss that party's action, or enter a default judgment against a party. Fed.R.Civ.P. 37(b)(2)(B) (iii, v-vi). These terminating sanctions are considered very severe and are only justified where the failure to produce stems from the "willfulness or bad faith" of the offending party. *Dreith v. Nu Image, Inc*., 648 F.3d 779, 2011 WL 2811226 at *8 (9th Cir. July 19,

2011); *see also In re Phenylpropanolamine (PPA) Prod. Liab. Litig.*, 460 F.3d 1217, 1233 (9th Cir.2006) (finding willfulness where plaintiffs refused to timely furnish requested material and unreasonably delayed completing a fact sheet that was necessary for defendants to mount a defense); *Computer Task Group, Inc. v. Brotby*, 364 F.3d 1112, 1115 (9th Cir.2004) (finding willfulness where defendant "engaged in a consistent, intentional, and prejudicial practice of obstructing discovery by not complying with repeated court orders and not heeding multiple court warnings"). The willfulness standard is met by "disobedient conduct not shown to be outside the control of the litigant." *Henry v. Gill Indus., Inc.*, 983 F.2d 943, 948 (9th Cir.1993) (citing Fjelstad, 762 F.2d at 1341).

Here, it is beyond dispute that Plaintiffs failed to comply with the Court's discovery orders. First, Plaintiffs disobeyed the Magistrate Judge's interim Order of July 18, 2019 by failing to serve various specified, highly-relevant documents by the date set, and second, Vestis and Ginve Modas failed to comply with the September 19, 2019 Discovery Order (Dkt. 122) by again failing to serve written responses to two sets of written discovery (p. 8, l. 24 – p. 9, l. 8), failing to produce any of the documents in the twelve categories described in that order (p. 6, l. 1 – p. 8, l. 22), and failing to pay the sanctions awarded (p. 10, l. 10-28). Now, Plaintiffs have disobeyed the Court's orders again, by failing and refusing to appear for their noticed depositions.

It is also beyond dispute that Plaintiffs' actions, or at a minimum some of those actions in violation of the Court's orders, were within their control and were therefore willful. *Fair Housing of Marin*, 285 F.3d at 905–06. Indeed, Plaintiffs actions were deliberate and intentional. Once the non-moving party has been shown to have engaged in willful misconduct, as here, the Ninth Circuit has established five factors that a court must weigh in determining whether terminating sanctions are justified: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking

sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions. *Dreith*, 648 F.3d 779 (*citing Malone v. U.S. Postal Serv.*, 833 F.2d 128, 130 (9th Cir.1987)). When a court order is violated, the first and second factors generally favor sanctions and the fourth cuts against them. *Computer Task Group Inc.*, 364 F.3d at 1115. Thus, the propriety of ordering terminating sanctions will often turn on the third and fifth factors. *Id*. Terminating sanctions may be warranted "where at least four factors support dismissal or where at least three factors strongly support dismissal." *Dreith*, 648 F.3d 779 (internal quotation marks omitted). Although preferred, it is not required that a court make explicit findings to show that it has considered the five factors set forth by the Ninth Circuit. *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1096 (9th Cir.2007). Ultimately, "the most critical factor to be considered in case-dispositive sanctions is whether a party's discovery violations make it impossible for a court to be confident that the parties will ever have access to true facts." *Id*. at 1097.

### 1. The <u>First Two Ninth Circuit</u> Factors Weigh Heavily In Favor Of Terminating Sanctions.

The first two Ninth Circuit factors require a court to consider (1) the public's interest in expeditious resolution of litigation and (2) the court's need to manage its docket. *Dreith*, 648 F.3d 779. As previously noted, heavily in favor of terminating sanctions. The public and this Court have an interest in securing "the just, speedy and inexpensive determination" of all actions before the Court, including this action. Fed.R.Civ.P. 1; *see also Yourish v. California Amplifier*, 191 F.3d 983, 990 (9th Cir.1999) ("The public's interest in expeditious resolution of litigation always favors dismissal."); *Dreith v. Nu Image, Inc.*, No. 10-55172, 2011 WL 2811226, at *8 (9th Cir. July 19, 2011) (district court did not abuse its discretion by imposing sanction of default for discovery violations, where defendants delayed resolution of case, interfered with court's management of its docket in "one of the busiest districts

in country" (the Central District of California), and prior order to produce documents and answer interrogatories represented first, lesser sanction than default).

Here, Defendants continue to struggle to obtain the basic discovery they need, and the delay is due to Plaintiffs' willful disregard of both their discovery obligations and of this Court's orders. Consequently, the public's interest in having this case resolved and the Court's interest in managing its docket have been harmed by Plaintiffs' conduct. Plaintiffs' obstructive conduct poses a genuine threat to the expeditious resolution of this litigation and the Court's need to manage its docket.

### 2. The **Third Ninth Circuit** Factor Weighs Heavily In Favor Of Terminating Sanctions.

The third factor considers whether the Plaintiffs Vestis and Ginve Modas's actions have impaired the Defendants' ability to go to trial or interfered with the rightful decision of the case. *See In re Phenylpropanolamine*, 460 F.3d at 1227. As previously noted, the Court must consider whether the party's discovery violations "make it impossible for a court to be confident that the parties will ever have access to the true facts." *Conn. Gen. Life Ins. Co*., 482 F.3d at 1097 (internal quotation marks omitted). The Ninth Circuit has determined that a party's "[f]ailure to produce documents as ordered ... is considered sufficient prejudice" to support the issuance of sanctions. *Adriana Int'l Corp*., 913 F.2d at 1412); *see also Leon v. IDX Sys. Corp*., 464 F.3d 951, 959 (9th Cir.2006) (prejudice results when a party's refusal to provide documents forces the other party to rely on incomplete and spotty evidence at trial).

Here, it is readily apparent that Plaintiffs' conduct has impaired Defendants' ability to proceed and has damaged the "integrity of the discovery process [such] that there can never be assurance of proceeding on the true facts." *Id*. Vestis and Ginve Modas have made conflicting representations as to whether there are in possession of documents that support their defense.

Indeed, there are significant issues integral to the Defendants defenses and

counter-claims that the Plaintiffs have stonewalled discovery on, leaving the Defendants severely prejudiced in their efforts to establish their claims and defenses. For example, in regard to the fabricated shipping and customs documents that the Plaintiffs have admitted to transmitting to the Defendants:  Plaintiffs claim that those documents were actually created by Defendant Popeck, yet have refused to produce the correspondence and text messages surrounding those documents that are needed to either prove or disprove the Plaintiffs' assertion.  Likewise, that same assertion of fact also underlies the Plaintiffs' fraud claim.

In other words, Plaintiffs are using their refusal to comply with their discovery obligations to cause significant prejudice to the Defendants in regard to both the Plaintiffs' positive claims and the Counterclaims.

It should be readily apparent that the information sought – both those specifics laid out in the previous two paragraphs, and the other evidence the Plaintiffs are withholding, including everything from banking documents, to communications with third-party witnesses, to the very communications Plaintiffs base their fraud claim on – is all critically important to the Defendants' trial preparation, and that Plaintiffs' obstructive behavior severely casts doubt on whether this action can proceed on the true facts, or even at all.

Foremost, the simple fact that Vestis and Ginve Modas have consistently failed to obey court orders compelling them to cooperate and to produce documents as ordered is, by itself, ample ground to find prejudice. *See In re Phenylpropanolamine*, 460 F.3d at 1236 ("Prejudice from unreasonable delay is presumed. Failure to produce documents as ordered is sufficient prejudice, whether or not there is belated compliance.") (internal citation omitted); *Computer Task Group, Inc*., 364 F.3d at 1116 ("[F]ailure to produce documents as ordered ... is considered sufficient prejudice" under the third factor of the Malone balancing test) (internal quotation marks omitted). Plaintiffs' conduct has resulted in substantial

interference with the prompt resolution of the case. Therefore, this factor weighs heavily in favor of terminating sanctions.

Further, more, Defendants have suffered prejudice in three ways that affect their ability to try this case. First, Defendants have been unable to investigate completely the nature of their claims and the extent of their damages. Particularly, there may be additional injuries inflicted by Plaintiffs that have not been discovered at all simply because Plaintiffs refuse to produce all correspondence or open up their accounting data. Plaintiffs' failure to appear for depositions, provide adequate responses to the interrogatories, and produce electronic accounting records permeates every issue of the litigation and prevents Defendants from being able to present a complete case to the jury.

Second, Plaintiffs' conduct has unnecessarily delayed the resolution of this case and that such delay necessarily prejudices their case because evidence becomes stale, witness memories fade and documents (still not produced by defendants) are lost. Plaintiffs further argue that this delay has likely compounded their injuries because Vestis and Ginve Modas have continued to hold over one millions dollars belonging to the Defendants, preventing the Defendants from obtaining it and potentially squandering or secreting it away, during the last year of litigation.

Third, Plaintiffs delay has contributed to increased litigation expenses and that Plaintiffs' tactics have forced Defendants to waste valuable resources in preparing for depositions that never occurred. Defendants would be financially prejudiced by paying for a trial after Vestis and Ginve Modas have boycotted discovery.

### 3. The Fourth Ninth Circuit Factor Weighs Against Terminating Sanctions But Is Not Dispositive.

The fourth factor requires a court to consider the "public policy favoring the disposition of cases on their merits." *Dreith*, 648 F.3d 779, 2011 WL 2811226 at *8. Generally speaking, this factor "always weighs against dismissal." *Id*. By itself,

1  however, this factor is not dispositive as the five Ninth Circuit factors are "not a
2  series of conditions precedent" that must all be found before the imposition of
3  terminating sanctions is warranted, but rather are "a way for a district judge to think
4  about what to do...." *Conn. Gen. Life Ins. Co.*, 482 F.3d at 1096.

5  Here, public policy favoring resolution of cases on their merits does not
6  outweigh the other factors favoring terminating sanctions. *See Rio Properties, Inc. v.
7  Rio Int'l Interlink*, 284 F.3d 1007, 1022 (9th Cir.2002) ("While the public policy
8  favoring disposition of cases on their merits weighs against default judgment, that
9  single factor is not enough to preclude imposition of this sanction when the other
10  four factors weigh in its favor.").

11  Further, the fourth factor does not weigh against terminating sanctions when
12  the offending party fails to comply with discovery obligations in a way that prevents
13  the case from moving toward a resolution on the merits. *See In re
14  Phenylpropanolamine*, 460 F.3d at 1234; *In re Exxon Valdez*, 102 F.3d 429, 433
15  (9th Cir.1996) ("The overwhelming weight of the factors supporting dismissal
16  overcomes the policy favoring disposition of cases on their merits. But even that
17  policy lends little support to appellants, whose total refusal to provide discovery
18  obstructed resolution of their claims on the merits.").

19  Plaintiffs have been less than forthcoming with their production of documents
20  in this case, to the detriment of Plaintiffs, and at the risk of "interfer[ing] with the
21  rightful decision of the case." *Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1412
22  (9th Cir. 1990). Thus, on balance, the fourth factor weighs in favor of issuing
23  evidentiary sanctions against Defendants.

24  **4. The Fifth <u>Ninth Circuit</u> Factor Weighs Heavily In Favor Of
25  Terminating Sanctions.**

26  The fifth factor asks the Court to determine the viability of less drastic
27  sanctions by considering three sub-factors: (1) the availability of lesser sanctions;
28  (2) the use of lesser sanctions before termination; and (3) the adequate warning of

1    the possibility of termination.  *See Conn. Gen. Life Ins. Co*., 482 F.3d at 1096; *see*

2    *also Computer Task Group Inc*., 364 F.3d at 1116.  To satisfy this factor, a court

3    should consider lesser sanctions, order them, and give adequate warning of

4    impending termination. *Conn. Gen. Life Ins. Co*., 482 F.3d at 1096.

5          Here, lesser sanctions have been tried in this case, putting Vestis/Ginve

6    Modas on notice that their persistent discovery abuses and violations of court-

7    ordered discovery would result in serious consequences.  Between July 18, 2019,

8    and August 26, 2019, during the multiple Telephonic Discovery Hearings, the Court

9    repeatedly ordered the Plaintiffs to cooperate with discovery and produce responsive

10    documents.  Dkt. 122.  When Plaintiffs defied the Court's verbal orders, the Court

11    issued a comprehensive order on September 19, 2019, which included a significant

12    monetary sanction in the amount of $ $30,906.00.  *Id*.  Despite the Court multiple

13    orders during the various Telephonic Discovery Conference and September 19,

14    2019 Discovery Order, and monetary sanctions, Plaintiffs have refused to produce

15    document requests and demonstrate a continuous disregard to the discovery process

16    and this court's orders.  This disregard has denied Defendants an opportunity to

17    evaluate the assertions made by Plaintiffs in response to their claims.  It has also

18    needlessly consumed the resources of this court. On balancing the factors outlined

19    above, the court finds that, at minimum, evidentiary sanctions are appropriate. In

20    light of Plaintiffs' record of defying the Court's previous orders and the September

21    19, 2019 Discovery Order, further monetary sanctions will unlikely induced

22    compliance.

23          Adverse inference or evidentiary sanctions would also be insufficient because

24    the evidence Defendants could have obtained from use of the documents – had they

25    been provided – could have proved stronger than a mere inference. Where a party is

26    deprived of evidence relevant to key issues, and that evidence could have been used

27    to corroborate it position and garnered more evidentiary weight than a mere

28    inference, and adverse inference instruction does not cure the prejudice.  *Gutman v.*

*Klein,* 2008 Wl 4682208, *12 (E.D.N.Y. Oct. 15, 2008) ("the lesser sanction of an adverse inference would not restore the prejudiced parties to the same position they would have been," since the concealed evidence may very well have been "crucial evidence."). Nor would adverse inference or evidentiary sanctions address the prejudice Defendants have suffered from their inability to develop additional theories that may have been revealed. *State Farm*, 523 F. Supp. 2d at 998 (adverse inference and exclusion of evidence still would not cure risk that additional evidence on other theories would have been present in unavailable evidence; "dismissal is the only sanction that addresses this final type of prejudice."). Nothing less severe than terminating sanctions can eliminate the threat to the rightful resolution of this case, that Plaintiffs' failure to produce hundreds of responsive documents, and defiance of the Court's previous Orders. The Court should thus impose terminating sanctions on Plaintiffs.  *Hester*, 687 F.3d 1162 (upholding terminating sanctions where defendant failed to produce responsive documents and misrepresented to the court that it had produced all responsive documents)

### E. Alternatively, This Court Should Impose Issue And Evidentiary Sanctions.

Defendants ask, in the alternative, for evidentiary sanctions against Plaintiffs for their failure to produce responsive documents, which has prejudiced and impaired the Defendants' ability to prepare their case for trial.  Plaintiffs had ample opportunity to produce its responsive documents, but instead concealed critical evidence behind a wall of deceit.  Accordingly, Defendants respectfully request that the Court impose evidentiary sanctions listed in Exhibit AX of the Quintana Declaration, precluding Plaintiffs from offering evidence at trial or on summary judgment opposing Defendants' Counter-Claims or in support of Plaintiffs defendants' counterclaims. See Fed.R.Civ.P. 37(b)(2)(ii).

Further, Plaintiffs have repeatedly failed to produce responsive documents. Absent terminating sanctions, the only reasonable way to ensure a complete

production is the appointment of an independent forensic expert to take mirror images of all computers and drives where the Plaintiffs store their data.  This cost should be entirely borne by the Plaintiffs. The expert should then compare the data it collects against the previously-produced documents to identify which documents were not produced. *Treppel v. Biovail Corp.*, 249 F.R.D. 111, 124 (S.D.N.Y. 2008) (Permitting plaintiff to undertake a forensic examination "at the defendants' expense" where defendants violated discovery order); *Nacco Materials Handling Group, Inc. v. Lily Co.,* 278 F.R.D. 395, 406 (W.D. Tenn. 2011) ("Because [defendant's] deficient preservation and collection efforts necessitated these actions, the court finds that [defendant] should bear these [forensic examination] costs.")

After a meaningful document search is finally complete, additional discovery is necessary to mitigate the prejudice to Defendants. As addressed above, Defendants have been denied, among other things, the opportunity to explore additional legal theories, question key witnesses regarding improperly withheld documents, and identify additional key witnesses regarding this evidence that directly relates to issues Defendants must establish at trial.

**F.  Monetary Sanction In Connection With This Motion**.

Finally, Defendants respectfully requests the Court order Plaintiffs and/or their counsel of record to pay sanctions in the amount of $9,960.00 in connection with the filing of this Motion.  Quintana Decl., ¶¶44-47.

## II. CONCLUSION

For the reasons stated above, the Court should grant the Motion in its entirety.

DATED: October 1, 2019              QUINTANA LAW GROUP
                                    A Professional Law Corporation


                                    By: /s/ Andres F. Quintana
                                        Andres F. Quintana, Esq.
                                        Attorneys For Defendants and Counter-
                                        Claimants