Andres F. Quintana (SBN 190525)
John M. Houkom (SBN 203240)
**QUINTANA LAW GROUP**
A Professional Law Corporation
26135 Mureau Road, Suite 203
Calabasas, California 91302
Telephone: (818) 914-2100
Facsimile: (818) 914-2101
E-mail: Andres@qlglaw.com
         John@qlglaw.com

Attorneys for Defendants and Counter-Claimants
CARAMEL SALES, LTD; DAVID POPECK, TET APS, and THOMAS SCHMIDT

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VESTIS, LLC, aka VESTIS CALIFORNIA, LLC., a Nevada Limited Liability Company and; GINVE MODAS SL, a Spanish Limited Liability Company,<br><br>Plaintiffs,<br><br>vs.<br><br>CARAMEL SALES, LTD, a United Kingdom Limited Company; DAVID POPECK; an individual; TET APS, a Denmark Limited Company; THOMAS SCHMIDT, an individual and DOES 1 to 50, inclusive<br><br>Defendants.<br><br>AND RELATED CROSS-COMPLAINTS AND CROSS-ACTIONS | CASE NO. 8:18−cv−02257−DOC−KES<br>**DISCOVERY MATTER**<br><br>**DECLARATION OF ANDRES F. QUINTANA IN SUPPORT OF DEFENDANTS AND COUNTER-CLAIMANTS' NOTICE OF MOTION AND MOTION FOR TERMINATING SANCTIONS, OR IN THE ALTERNATIVE, FOR EVIDENTIARY AND ISSUE PRECLUSION SANCTIONS**<br><br>[Motion filed concurrently herewith]<br><br>**Hearing:**<br>Date:  October 29, 2019<br>Time:  10:00 a.m.<br>Courtroom:  6D, Santa Ana<br><br>Discovery Cut-Off:  November 18, 2019<br>Pre-Trial Conference:  February 10. 2020<br>Trial Date:  February 25, 2020 |

Quintana Law Group, APC

# DECLARATION OF ANDRES F. QUINTANA

I, ANDRES F. QUINTANA, declare and state as follows:

1. I am an attorney licensed to practice law in California and admitted to practice before the United States District Court for the Central District of California, and an attorney at the Quintana Law Group, APC, attorneys for Defendants and Counter-Claimants Caramel Sales Ltd. ("Caramel Sales"), TET ApS ("TET"), David Popeck ("Popeck") and Thomas Schmidt ("Schmidt", or collectively with Caramel Sales, TET and Popeck, the "Defendants") in the above-entitled case. I have first-hand, personal knowledge of the facts stated herein, and if called upon as a witness, could and would competently testify thereto.

## EFFORTS TO TAKE PLAINTIFFS' DEPOSITION

2. On March 15, 2019, my office personally served Michael Perry, Esq. then counsel of record for Plaintiffs Vestis, LLC, aka Vestis California LLC ("Vestis") and Ginve Modas, SL ("Ginve Modas" and collectively with Vestis, the "Plaintiffs') with deposition notices for the deposition of Plaintiff Vestis's Rule 30(b)(6) designee(s), Plaintiff Ginve Modas's Rule 30(b)(6) designee(s), Morgan Recchia, and Serge Recchia. True and correct copies of those four Notices of Deposition are attached hereto as Exhibits A, B, C and D, respectively.

3. On March 19, 2019, I traveled to and participated in an in-person conference with Mr. Perry to discuss pending discovery issues, including a deposition schedule. In summary, Mr. Perry and I agreed to propose a reasonable deposition schedule of our clients. Attached to my declaration as Exhibit E is a true and correct copy of an email I prepared and sent to Mr. Perry on March 20, 2019, memorializing the content of our March 19, 2019, discovery conference.

4. On April 11, 2019, I emailed Mr. Michael Perry informing him that I was still waiting for deposition dates from the Plaintiffs. Attached to my declaration as Exhibit F is a true and correct copy of an email I prepared and sent to Mr. Perry on April 11, 2019. That same day, Mr. Perry responded to my email indicating that

we would check with his clients on available deposition dates. Attached to my declaration as Exhibit G is a true and correct copy of an email that I received from Mr. Perry on April 11, 2019.

5. On April 30, 2019, I again emailed Mr. Perry requesting deposition dates for the Plaintiffs. Attached to my declaration as Exhibit H is a true and correct copy of an email I prepared and sent to Mr. Perry on April 30, 2019.

6. On May 1, 2019, I received an email from Mr. Perry. Attached to my declaration as Exhibit I is true and correct copy of an email I received from Mr. Perry on May 1, 2019. That same day, I emailed Mr. Perry regarding deposition dates and, specifically, for "as many dates for May, June and July as possible." Attached to my declaration as Exhibit J is a true and correct copy of an email I prepared and sent to Mr. Perry on May 1, 2019.

7. On May 8, 2019, the law firm of Browne George Ross LLP substituted in as new counsel of record for the Plaintiffs. That same day, I received an email from Tyler King, Esq. of Browne George Ross LLP stating: "Nice to meet you. I'm happy to jump on the phone today to meet-confer regarding the outstanding discovery as I understand it. Please let me know when you're available." Attached hereto as Exhibit AI is a true and correct copy of Mr. King's May 8, 2019 email to me. I telephoned Mr. King that same day and I conducted a telephonic meet and confer with him. Subsequent to my conference call with Mr. King, I emailed him asking for deposition dates for Plaintiffs. Attached to my declaration as Exhibit K is a true and correct copy of an email I prepared and sent to Mr. King on May 8, 2019.

8. On May 9, 2019, Mr. King sent me an email. Attached to my declaration as Exhibit L is a true and correct copy of an email that I received from Mr. King on May 9, 2019.

9. On May 28, 2019, I spoke with Mr. King by telephone to discuss various discovery issues. During that call, I again inquired about deposition dates for Plaintiffs.

10. On May 29, 2019, I emailed Mr. King and confirmed the content of our May 28, 2019, call and reiterated the need to receive deposition dates for Plaintiffs by May 31, 2019. Attached to my declaration as Exhibit M is a true and correct copy of an email I prepared and sent to Mr. King on May 29, 2019.

11. On May 31, 2019, Plaintiffs' counsel replied that "[o]n the deposition dates, I am waiting to hear back from the client and will let you know as soon as I hear back." Attached to my declaration as Exhibit N is a true and correct copy of an email that I received from Mr. King on May 31, 2019. That same day, I emailed Mr. King asking for "a date certain that you will provide deposition dates and produce supplemental documents." Attached to my declaration as Exhibit O is a true and correct copy of an email that I prepared and sent to Mr. King on May 31, 2019.

12. On June 3, 2019, Mr. King emailed me back stating, "[a]s far as a 'date certain' for deposition dates and supplemental documents, those issues are both in the client's hands so I will speak to him this week and get back to you." Attached to my declaration as Exhibit P is a true and correct copy of an email that I received from Mr. King on June 3, 2019.

13. On June 3, 2019, having not received deposition dates from Browne George Ross LLP, Defendants decided to seek judicial intervention. Specifically, I sent an email to Mr. King, which was also copied to Mr. Peter Ross ("Ross"), also of Browne George Ross LLP, to which was attached the JOINT STIPULATION RE: DEFENDANTS AND COUNTER-CLAIMANTS TET APS AND CARAMEL SALES, LTD.'S MOTION TO COMPEL DEPOSITIONS OF PLAINTIFFS VESTIS, LLC AKA VESTIS CALIFORNIA LLC AND GINVE MODAS, SL (the "Joint Statement"), pursuant to Local Rule 37-2.2, which contained the Defendants' portion of that joint statement. Pursuant to that Local Rule, Plaintiffs were to provide their portion of the Joint Statement within seven (7) days, by June 10, 2019. Attached to my declaration as Exhibit Q is a true and correct copy of the Joint

1  Statement transmitted to Mr. Ross and Mr. King on June 3, 2019.

2  14. On June 10, 2019, the same day the Plaintiffs' portion of the Joint Statement was due, I received an email from Mr. King, wherein Mr. King provided specific dates available for depositions at our offices: September 4-6, 17-19 and 23-27, 2019. Mr. Ross was copied on the email. Attached to my declaration as Exhibit R is a true and correct copy of the email I received from Mr. King on June 10, 2019, at approximately 1:09 p.m.

15. Despite additional attempts by myself to convince the Plaintiffs, through their counsel, to appear for depositions closer in time, rather than the September dates approximately three months out, I was unable to obtain closer dates, and on July 15, 2019, my office served four deposition notices on the Plaintiffs, selecting from among the dates proposed by Mr. King, September 4, 5, 6 and 17, 2019. Attached to my declaration as Exhibit S is a true and correct copy of the Defendants' Deposition Notice for the Fed.R.Civ.P. 30(b)(6) corporate designee of Plaintiff and Counter-Defendant Vestis, LLC, set on September 4, 2015, which was served on July 15, 2019. Attached to my declaration as Exhibit T is a true and correct copy of the Defendants' Deposition Notice for the Managing Member of Plaintiff and Counter-Defendant Vestis, LLC, Mr. Morgan Recchia, set on September 5, 2015, which was served on July 15, 2019. Attached to my declaration as Exhibit U is a true and correct copy of the Defendants' Deposition Notice for the Managing Member of Plaintiff and Counter-Defendant Ginve Modas SL, Mr. Serge Recchia, set on September 6, 2015, which was served on July 15, 2019. Attached to my declaration as Exhibit V is a true and correct copy of the Defendants' Deposition Notice for the Fed.R.Civ.P. 30(b)(6) corporate designee of Plaintiff and Counter-Defendant Ginve Modas SL, set on September 17, 2015, which was served on July 15, 2019.

16. On August 16, 2019, I received an email from Mr. King, indicating, for the first time, that the Plaintiffs and their personnel will not appear at the noticed depositions, stating, in relevant part, that:

> We are not available for deposition September 4-6. We may be available on September 17. We are looking into alternative dates in September and October that work for our side and will provide shortly.

Attached to my declaration as Exhibit W is a true and correct copy of the email I received from Mr. King at approximately 11:30 a.m. on August 16, 2019.

17. On August 21, 2019, Defendants filed their *Ex Parte* Application To Compel Depositions Of Plaintiffs Vestis, LLC Aka Vestis California LLC, Ginve Modas SL, Morgan Recchia And Serge Recchia; Memorandum Of Points And Authorities. Docket No. 97.

18. The Court considered this *Ex Parte* Application during the Telephonic Discovery Hearing on August 26, 2019. The Court granted Defendants and Counter-Claimants' *Ex Parte* Application in part. *See* Dkt 107. During the hearing on the *Ex Parte* Application on August 26, 2019, the Court directed the Plaintiffs to provide ten available deposition dates in September and October of 2019.

19. On August 30, 2019, the day those proposed dates were due, Mr. King transmitted an email to myself and Mr. John Houkom ("Houkom") of my office, proposing the following deposition dates: "Sept 30 Oct 1 2 [¶] Oct 21 22 23 [¶] Oct 28 29 30 31" Attached hereto as Exhibit X is a true and correct copy of the email that Mr. Houkom and I received from Mr. King on August 30, 2019.

20. On August 30, 2019, my office served continued deposition notices for the deposition of Plaintiff Vestis's Rule 30(b)(6) designee(s), Plaintiff Ginve Modas's Rule 30(b)(6) designee(s), Morgan Recchia, and Serge Recchia. True and correct copies of those four Notices of Continued Deposition are attached hereto as Exhibits Y, Z, AA and AB, respectively. The noticed deposition dates were: September 30, 2019 for Morgan Recchia and Vestis's Rule 30(b)(6) designee(s), October 1 and 2, 2019 for Serge Recchia and Plaintiff Ginve Modas's Rule 30(b)(6), respectively.

Quintana Law Group, APC

21. On September 6, 2019, Mr. Houkom participated in a telephonic meet and confer conference with Mr. King and Mr. Ross, regarding a proposed Motion for Judgment on the Pleadings the Defendants were considering filing at the time and have since filed. At the end of that conversation, Mr. Ross asked Mr. Houkom whether the Defendants would agree to continue the deposition of Morgan Recchia (with no mention of any other entity or individual) for two weeks, because his passport had been damaged by water. Mr. Houkom informed him that he would have to take the request to me since I would be conducted the depositions.

22. Later that same day, September 6, 2019, Mr. Houkom sent an email confirming the content of his telephonic conference of September 6, 2019, with Mr. King and Mr. Ross, and therein informed counsel for Plaintiffs that the Defendants would not agree to yet another delay in the deposition schedule. Attached hereto as Exhibit AC is a true and correct copy of Mr. Houkom's September 6, 2019, confirming email to Mr. King and Mr. Ross.

23. On September 12, 2019, Plaintiffs filed an *Ex Parte* Application, seeking an order continuing all four of the noticed depositions, based on purported damage to the passport of Morgan Recchia. Dkt. 115. In other words, according to the *Ex Parte* Application, only Morgan Recchia was supposedly incapable of attending the depositions on the dates noticed, while Serge Recchia's travel documents were not alleged to be unavailable, and there was no legitimate reason why he could not appear for his deposition as noticed. Plaintiffs contended that Serge Recchia would have preferred to travel with Morgan Recchia, but there was no reason presented why Serge Recchia could not attend with any other person, or, indeed, travel by himself, as a healthy, 66-year-old man with his full faculties. Later that same day, Defendants filed their Opposition to the *Ex Parte* Application (Docket No. 116), declaration in support of their Opposition (117-1) and Evidentiary Objections. Docket No. 116.

24. On September 13, 2019, the Court denied Plaintiff Vestis' *Ex Parte*

Application, stating, among other things:

> It is implausible to the Court that a French citizen abroad (i.e., in Spain) cannot get a damaged passport replaced to permit international travel (such as returning to France) in less than 1.5 months. As Morgan Recchia's declaration makes clear, he has not visited the French consulate or attempted to obtain a replacement passport yet. He assumed that he needed to wait until he obtained a certified birth certificate, and the basis for his assumption on that point is unclear (particularly when the consulate's website says otherwise).
>
> IT IS HEREBY ORDERED that the ex parte application is DENIED. The Court strongly suspects that Morgan Recchia will be able to obtain a replacement passport in time to travel tothe United States for his duly noticed deposition, in a forum chosen by Plaintiffs, if motivated to do so.

Dkt. 118. In other words, the Plaintiffs remained obliged to appear for their noticed depositions on September 30, 2019, and October 1 and 2, 2019.

25. On September 26, 2019, Mr. Houkom sent an email to Mr. King and Mr. Ross confirming the deposition dates of Vestis, Ginve Modas, Morgan Recchia and Serge Recchia. Attached hereto Exhibit AD is a true and correct copy of Mr. Houkom's September 26, 2019 email to Mr. King and Mr. Ross. Later that same day, Mr. King replied that the depositions would <u>not</u> be proceeding as noticed and ordered by the Court. Attached hereto as Exhibit AE is a true and correct copy of Mr. King's September 26, 2019 reply email. The Plaintiffs, Serge Recchia and Morgan Recchia did not appear for their depositions as noticed for September 30, 2019, and October 1, 2019, and I expect them to fail to appear tomorrow, October 2,

2019, as well.

## DEFECTIVE DOCUMENT PRODUCTION

26. On February 7, 2019, Defendant Popeck served his Requests for Production of Documents, Set One (the "Vestis RFPs") on Plaintiff Vestis. A true and correct copy of Defendant Popeck's RFPs to Plaintiff Vestis, Set One, is attached hereto as Exhibit AF.

27. On February 7, 2019, Defendant Popeck served his Requests for Production of Documents, Set One (the "Ginve RFPs") on Plaintiff Ginve Modas. A true and correct copy of Defendant Popeck's RFPs to Plaintiff Ginve Modas, Set One, are attached hereto as Exhibit AG.

28. On March 14, 2019, Defendant Caramel served its Requests for Admissions, Set One (the "Vestis RFAs") on Plaintiff Vestis. A true and correct copy of Defendant Caramel's RFAs to Plaintiff Vestis, Set One, are attached hereto as Exhibit AH.

29. On March 19, 2019, I participated in a face-to-face meet and confer conference with Mr. Perry, then counsel of record for the Plaintiffs. During my March 19, 2019, meet and confer conference with Mr. Perry, we agreed that the Plaintiffs and the Defendants would both produce any electronically stored information ("ESI"), such as emails, text messages, and the like, would be produced in their native format to the other side. Mr. Perry and I further agreed that supplemental responses to the first round of discovery requests propounded by each side, including the Responses to the Vestis RFPs and Ginve Modas RFPs, would be mutually-exchanged in late April. I then confirmed that agreement in writing by email on March 20, 2019. Specifically, I wrote:

> We both agreed to produce our respective clients' responsive documents on April 22, 2019 so that the production is simultaneous. Specifically, we agreed to send by overnight on April 22, 2019 for April 23, 2019 delivery, all responsive

Quintana Law Group, APC

9

documents on flash drives or CDs so that the documents, particularly emails and digital evidence, can be presented in their native format.

A true and correct copy of my March 20, 2019, email to Mr. Perry confirming the content of the March 19, 2019, face-to-face conference is attached hereto as Exhibit AM. Mr. Perry responded to my March 20, 2019, email by stating: "Agreed Andre [sic], thank you so [sic] working this out." A true and correct copy of Mr. Perry's confirming March 20, 2019, email to me is attached hereto as Exhibit AN.

30. On or about April 23, 2019, Plaintiffs made a limited production of documents, purportedly in compliance with the Vestis RFPs and Ginve Modas RFPs, among other requests, but the documents produced were not provided in native format, and instead were provided in Portable Document Format ("PDF"). Further, the materials produced by Plaintiffs were facially incomplete, as they lacked many responsive documents of which Defendants were aware and of which Defendants believed were in the possession, custody or control of the Plaintiffs.

31. Then, on or about May 8, 2019, Plaintiffs filed a Substitution of Counsel, replacing Mr. Perry as Plaintiffs' counsel of record in this case with the firm of Browne George Ross LLP.

32. On or about May 8, 2019, I received an email from Mr. King stating: "Nice to meet you. I'm happy to jump on the phone today to meet-confer regarding the outstanding discovery as I understand it. Please let me know when you're available." Attached hereto as Exhibit AI is a true and correct copy of Mr. King's May 8, 2019 email to me.

33. I proceeded to hold a telephonic conference with Mr. King on May 8, 2019, with regards to the RFPs and RFAs, among other subjects. To facilitate that discussion, I forwarded to Mr. King a copy of my May 3, 2019 email to Mr. Perry. Attached hereto as Exhibit AJ is a true and correct copy of my May 8, 2019 email to Mr. King in which I forwarded to him a copy of my May 3, 2019 email to Mr. Perry.

Among other things, during my call with Mr. King I reiterated the need to receive documents in their native format and all outstanding responsive documents and text messages, and Mr. King indicated to me that the Plaintiffs would consider possible supplementation and/or production, though no date for that event was offered or agreed to by Mr. King.

34. On or about May 16, 2019, I participated in a telephonic conference with Mr. King, in relation to a then-pending subpoena that the Defendants had served on Google, Inc., seeking emails that had not been produced by Plaintiffs (the "Google Subpoena"), despite those emails being unprivileged and responsive to multiple RFPs that had been served. During the meet and confer process related to the Google Subpoena, Plaintiffs, through Mr. King and Mr. Peter Ross, agreed to consider, and eventually did authenticate, nearly two dozen emails from the Vestis email account subject to the Google Subpoena, but which had not been produced in response to the Vestis RFPs or the Ginve RFPs. A true and correct copy of the Stipulation admitting the authenticity of those emails is attached hereto as Exhibit AK.

35. On May 29, 2019, I sent an email to Mr. King, memorializing our conversation of May 28, 2019. In my May 29, 2019, I wrote:

> Following-up on our conversation of yesterday afternoon, I once again discussed the outstanding discovery responses that we met and conferred on May 8th. See below. I also reiterated the three batches of documents we still don't have – the native/digital files, the responsive documents your clients have but failed to produce and the text messages. I also requested (again) deposition dates of your clients. It's been 3 weeks and we need supplemental responses and deposition dates as soon as possible but no later than the close of business this Friday. Thank you for your cooperation.

A true and correct copy of my May 29, 2019 email to Mr. King is attached hereto as Exhibit AL.

36. In 2017 and 2018, Defendants received multiple WhatsApp text messages from the Plaintiffs, and those and other relevant text messages were responsive to multiple categories of documents requested in the Vestis RFPs and the Ginve RFPs, yet Plaintiffs have not produced and continue to fail and refuse to produce such WhatsApp text messages. True and correct copies of exemplar WhatsApps text messages between Morgan Recchia of Vestis and Defendants are attached hereto as Exhibit AO. A true and correct copy of exemplar WhatsApps text messages between Serge Recchia of Ginve Modas and Defendants that were not produced by Ginve Modas in this case are attached hereto as Exhibit AP.

37. During 2017, and 2018, there were many emails between Serge Recchia and Defendants, including Serge Recchia confirming his receipt of wired funds from Defendants. True and correct copies of exemplar emails received by Defendants that appear to originate from Serge Recchia of Ginve Modas and that were produced by Defendants in this case but not Ginve Modas are attached hereto as Exhibit AQ.

38. With regards to Plaintiff Vestis, there are many emails missing from that party's production, including many of the emails that Defendants produced and had Vestis authenticate through the Authentication Joint Stipulation, as well as missing documents to and from third-party witnesses. True and correct copies of exemplar emails received by Defendants that appear to originate from Morgan Recchia of Vestis, that were produced by Defendants in this case but not Vestis are attached hereto as Exhibit AR.

39. With regards to the missing corporate contracts and documents of Plaintiff Vestis that were not produced by Plaintiffs in violation of the Court's orders, those documents appear to exist. For instance, on June 12, 2019, Vestis served its Responses to Thomas Schmidt's Request for Admissions, Set One, in

Quintana Law Group, APC

which Vestis admitted, among other things:

> REQUEST FOR ADMISSION NO. 9:
> Admit that there is no written agreement between American Brands SL and VESTIS concerning trade secrets.
>
> RESPONSE TO REQUEST FOR ADMISSION NO. 9:
> DENY.
>
> REQUEST FOR ADMISSION NO. 10:
> Admit that there is no written agreement between American Brands SL and VESTIS concerning confidential information.
>
> RESPONSE TO REQUEST FOR ADMISSION NO. 10:
> DENY.

Attached to my Declaration as Exhibit AS, is a true and correct copy of Vestis' Responses to Thomas Schmidt's Request for Admissions, Set One, served on June 12, 2019. Further, on June 17, 2019, Plaintiff Vestis served its Amended Responses To First Set Of Requests For Admission From Defendant/Counter Claimant Tet ApS, in which it further acknowledged the existence of additional corporate contracts, as follows:

> REQUEST FOR ADMISSION NO. 22:
> Admit that there are no written agreements between VESTIS, on the one hand, and MORGAN RECCHIA, on the other hand.
>
> RESPONSE TO REQUEST FOR ADMISSION NO. 22:
> In addition to the General Objections, Plaintiff objects to this Request because it seeks irrelevant information and not likely to lead to the discovery of admissible evidence, confidential privileged information, compound, and overbroad, is vague and ambiguous. Accordingly, Plaintiff will not answer this Request.
>
> AMENDED RESPONSE TO REQUEST FOR ADMISSION NO. 22:
> DENY.
>
> REQUEST FOR ADMISSION NO. 23:

13

> Admit that there are no written agreements between VESTIS, on the one hand, and SERGE RECCHIA, on the other hand.
>
> RESPONSE TO REQUEST FOR ADMISSION NO. 23:
> In addition to the General Objections, Plaintiff objects to this Request because it seeks irrelevant information and not likely to lead to the discovery of admissible evidence, confidential privileged information, compound, and overbroad, is vague and ambiguous. Accordingly, Plaintiff will not answer this Request.
>
> AMENDED RESPONSE TO REQUEST FOR ADMISSION NO. 23:
> DENY.

Attached to my Declaration as Exhibit AT, is a true and correct copy of Vestis' Amended Responses To First Set Of Requests For Admission From Defendant/Counter Claimant Tet ApS, served on or about June 17, 2019.

  40. Ginve Modas also made similar admissions and acknowledgement regarding the existence of additional corporate contracts. For instance, in Ginve Modas' Responses to Schmidt RFAs Set One, served on June 14, 2019:

> REQUEST FOR ADMISSION NO. 11:
> Admit that there is no written agreement between American Brands SL and GINVE MODAS concerning trade secrets.
>
> RESPONSE TO REQUEST FOR ADMISSION NO. 11:
> DENY.
>
> REQUEST FOR ADMISSION NO. 12:
> Admit that there is no written agreement between American Brands SL and GINVE MODAS concerning confidential information.
>
> RESPONSE TO REQUEST FOR ADMISSION NO. 12:
> DENY.

Attached to my Declaration as Exhibit AU, is a true and correct copy of Ginve Modas Responses to Schmidt RFAs Set One, served on June 14, 2019.

Quintana Law Group, APC

**PRE-LITIGATION CORRESPONDENCE**

41. Attached to my Declaration as Exhibit AW is an email that was sent by attorney named Gerard Soussan, dated June 18, 2018, to my clients. In that correspondence, attorney Soussan asserted that "this law offices represents Morgan Recchia, Serge Rechia, and Vestis LLC/American Brands Invest SL/Ginve Modas ('my clients').

42. Attached to my Declaration as Exhibit AV is a June 1, 2018, email that was produced by Quetico, LLC pursuant to a deposition subpoena.

43. As of October 1, 2019, at 3:00 p.m., my office has not received any additional documents or supplemental responses in connection with the Court's September 19, 2019 Discovery Order. Nor has my office received the monetary sanction payment ordered therein. While it is incorporated in the September 19, 2019 Discovery Order, to be clear, Plaintiffs have not produced any of the documents identified in Appendix 1, have produced no bank statements for Vestis, and produced no evidence of what was done with the Defendants' funds after they were sent to Plaintiffs.

44. My billing rate in this case is currently, and at all relevant times was, three-hundred dollars ($300.00) per hour. I received my Juris Doctorate degree from the University of California at Berkeley, and have over twenty (20) years of experience as a civil litigator. I have been a principal of at the Quintana Law Group, APC, for more than twelve (12) years, and am intimately familiar with its record-keeping and billing systems. Time expended for the clients of Quintana Law Group, APC, are entered into its billing system at or near the time that work is done for those clients, in the normal course of business and as part of the job duties of the individuals, in this instance, specifically the attorneys, that expend that time and therefore have personal knowledge of its expenditure. Those records are regularly maintained by the Quintana Law Group, APC, I have full access to those records, and reviewed them in detail in order to prepare this declaration.

45. Mr. Houkom's billing rate on this case currently, and at all relevant times was, two-hundred and forty dollars ($240.00) per hour. Mr. Houkom received his Juris Doctorate degree from the University of California at Berkeley, and has over eighteen (18) years of experience as a civil litigator.

46. I expended just over 16.0 hours preparing the Motion For Terminating Sanctions, this Declaration and compiling the exhibits hereto. Mr. Houkom has expended over 4.0 hours preparing the Motion For Terminating Sanctions. Thus, to date, Defendants have incurred more than $5,760.00 in attorneys' fees in the preparation of this Motion For Termination Sanctions.

47. It is anticipated that I will spend another 14 hours reviewing Plaintiffs' expected opposition and preparing Defendants' reply brief to same, and preparing for and attending the hearing on the Motion For Terminating Sanctions, for a total additional, with the incurrence of an additional $4,200.00, for a total amount of costs and fees expected to be incurred by Defendants in relation to the instant motion is in excess of $9,960. That is the minimum monetary sanction that should be entered against Plaintiffs Vestis and Ginve Modas and/or their counsel of record.

48. Attached hereto as Exhibit AX is a list of the specific evidentiary and issue preclusion sanctions being sought by the Defendants and Counter-Claimants in the instant motion, broken down as to specify which evidentiary and issue preclusion sanctions are being sought against each Plaintiff, and by which Defendant or Defendants.

I declare under penalty of perjury under the laws of the State of California and the United States of America, that the foregoing is true and correct.

Executed this 1st day of October, 2019, in Calabasas, California.

/s/ Andres F. Quintana

_____
ANDRES F. QUINTANA