1  Andres F. Quintana (SBN 190525)
2  **QUINTANA LAW GROUP**
   A Professional Law Corporation
3  5627 Kanan Road, Suite 182
4  Agoura Hills, California 91301
   Telephone:(818) 914-2100
5  E-mail: Andres@qlglaw.com

6
   Attorneys for Defendants and Counter-Claimants
7  CARAMEL SALES, LTD; DAVID POPECK, TET APS, and THOMAS
8  SCHMIDT

9              **UNITED STATES DISTRICT COURT**

10             **CENTRAL DISTRICT OF CALIFORNIA**

11  VESTIS, LLC, aka VESTIS                CASE NO. 8:18-cv-02257-DOC-KES
12  CALIFORNIA, LLC., a Nevada Limited
    Liability Company and; GINVE          **DEFENDANTS AND COUNTER-**
13  MODAS SL, a Spanish Limited Liability **CLAIMANTS' NOTICE OF**
    Company,                              **MOTION AND MOTION FOR**
14                                        **FINAL JUDGMENT;**
15              Plaintiffs,               **MEMORANDUM OF POINTS AND**
                                          **AUTHORITIES**
16       vs.
17                                        **[Declaration of Andres Quintana and**
    CARAMEL SALES, LTD,                   **[Proposed] Final Judgment Lodged**
18  a United Kingdom Limited Company;     **concurrently herewith]**
    DAVID POPECK; an individual; TET
19  APS, a Denmark Limited Company;       **Hearing:**
20  THOMAS SCHMIDT, an individual and
    DOES 1 to 50, inclusive              Date:  October 25, 2021
21                                        Time:  8:30 a.m.
22              Defendants.               Courtroom:  9D, Santa Ana
23
24  ─────────────────────────────
25  AND RELATED CROSS-
    COMPLAINTS AND CROSS-
26  ACTIONS
27
28

Quintana Law
Group, APC

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on October 25, 2021, at 8:30 a.m. in Courtroom 9D before the Honorable Judge David O. Carter, located at 411 West Fourth Street, Santa Ana, California 92701, or as soon thereafter as the matter may be heard, Defendants and Counter-Claimants Caramel Sales, Ltd. ("Caramel Sales"), TET ApS ("TET"), David Popeck ("Popeck") and Thomas Schmidt ("Schmidt", or collectively with TET, Caramel Sales and Popeck, the "Defendants" or "Counter-Claimants") will and do move for the entry of Final Judgment, pursuant to Federal Rules of Civil Procedure 54 and 58, and specifically in favor of the Counter-Claimants and against Counter-Defendants Morgan Recchia, Serge Recchia, Vestis LLC, and Ginve Modas, SL, jointly and severally, for (1) general and compensatory damages, (2) consequential damages, (3) punitive damages, or in the alternative, treble damages under the Federal RICO Act, (4) prejudgment interest, (5) attorneys' fees and costs under the Federal RICO Act, and (6) an award for unpaid discovery sanctions.    Specifically, the Counter-Claimants seek the following amounts:

<u>FOR ALL COUNTER-CLAIMANTS</u>

| | |
|---|---|
| General and Compensatory Damages: | $   1,313,242.50 |
| Consequential Damages: | $   4,703,020.40 |
| Treble Damages Under Federal RICO Act | $ 18,048,788.70 |
| (or, in the alternative, as Punitive Damages) | |
| Attorneys' Fees | $      464,988.00 |
| Prejudgment Interest: | $      548,683.56 |
| Unpaid Litigation Sanctions: | $        40,866.00 |
| **TOTAL** | **$ 25,119,589.16** |

Furthermore, Counter-Claimants Caramel Sales and Popeck seek the additional following amounts for their separate and additional claims:

///

## FOR AN ADDITIONAL AMOUNT TO COUNTER-CLAIMANTS

## CARAMEL SALES AND POPECK

| | | |
|---|---|---|
| General and Compensatory Damages: | $ | 534,542.85 |
| Prejudgment Interest: | $ | 165,635.06 |
| **TOTAL** | $ | **700,177.91** |

This Motion is based on this Notice of Motion, the attached Memorandum of Points and Authorities, the Declaration of Andres Quintana and the exhibits and documents attached thereto, and all filed concurrently herewith, as well as the [Proposed] Final Judgment lodged concurrently herewith, and such other oral and/or documentary evidence or argument as may be presented prior to or at the time of hearing on this matter.

DATED: September 24, 2021      QUINTANA LAW GROUP
                               A Professional Law Corporation


                               By: /s/ Andres F. Quintana
                                   Andres F. Quintana, Esq.
                                   Attorneys For Defendants and Counter-
                                   Claimants TET ApS, Thomas Schmidt,
                                   Caramel Sales, Ltd. and David Popeck

1

## **TABLE OF CONTENTS**

2

3    MEMORANDUM OF POINTS AND AUTHORITIES ........................................ 4

4    I.  DAMAGES REQUESTED FOR ALL THE COUNTER-CLAIMANTS
5        COLLECTIVELY RESPONDENTS .................................................................. 5

6        A. Counter-Claimants Request Actual, Compensatory and Consequential.

7            Damages for Breach of Contract ...................................................... 5

8            1. Compensatory/General Damages ............................................. 6

9                a. This Court Should Apply the "Breach Day Rule" To Convert

10                The Award From Euro to U.S. Dollars ...................................... 6

11            2. Consequential/Special Damages For Breach of Contract or

12                Tort Claims.................................................................................. 7

13                a. This Court Should Apply the "Breach Day Rule" To Convert

14                The Award From Euro to U.S. Dollars .................................... 11

15        B.  Counter-Claimants Request Punitive Damages ........................... 12

16        C.  Counter-Claimants Request Treble Damages Under The Federal

17            RICO Act ........................................................................................ 14

18        D.  Counter-Claimants Request Attorney's Fees & Costs Under The Federal

19            RICO Act ........................................................................................ 14

20            1. Legal Standard.......................................................................... 15

21            2. Reasonable Attorneys' Hourly Rate........................................ 15

22            3. Reasonable Attorneys' Fees .................................................... 16

23            4. Lodestar Calculation................................................................ 17

24        E.  Counter-Claimants Request Prejudgment Interest....................... 17

25            1. Mandatory Prejudgment Interest Under California Civil Code

26                Section 3287(a)........................................................................ 18

27                a. This Court Should Apply the "Breach Day Rule" As The Start

28                Date For The Calculation of Prejudgment Interest................... 19

b. California Law Provides For Interest Rate of Ten Percent Per Annum ............................................................................. 19

2. Alternatively, Counter-Claimants Seek Discretionary Prejudgment Interest Under Section 3287(b) ............................................. 20

3. Discretionary Interest for Fraud ............................................. 21

4. Discretionary Interest for Federal RICO Act Violation ........................ 22

F.  Award For Unpaid Litigation Sanctions ....................................... 22

II. ADDITIONAL DAMAGES REQUESTED BY COUNTER-CLAIMANTS CARAMEL SALES ................................................................. 22

A.  Counter-Claimant Caramel Sales Requests Compensatory Damages Related to its Contractual Claim ............................................. 23

B.  Counter-Claimant Caramel Sales Requests Discretionary Pre-Judgment Interest .................................................... 23

III. CONCLUSION ................................................................. 24

1         <u>TABLE OF AUTHORITIES</u>

2 <u>FEDERAL CASES</u>

3

4 *AdGear, Inc. v. Liu*,

5     No. CV-11-05298 JCS, 2012 WL 2367805

6     (N.D. Cal. June 21, 2012) ................................................................... 9

7 *Aetna Cas. Sur. Co. v. P & B Autobody*,

8     43 F.3d 1546 (1st Cir. 1994) ........................................................... 22

9 *AT&T Co. v. United Computer Systems*,

10     98 F.3d 1209 (9th Cir. 1996) ........................................................... 17

11 *Barnard v. Theobald*,

12     721 F.3d 1069 (9th Cir. 2013) ......................................................... 21

13 *Blum v. Stenson*,

14     465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984) ................. 16

15 *Cataphora Inc. v. Parker*,

16     848 F.Supp.2d 1064 (N.D.Cal. 2012) ............................................ 18

17 *Cooper Industries, Inc. v. Leatherman Tool Group, Inc.*,

18     532 U.S. 424, 121 S.Ct. 1678, 149 L.Ed.2d 674 (2001) .............. 11

19 *Domanus v. Lewicki*,

20     742 F.3d 290 (7th Cir. 2014) ............................................................. 9

21 *Evanston Ins. Co. v. OEA*, Inc.,

22     566 F.3d 915 (9th Cir. 2009) ........................................................... 18

23 *Fischer v. SJB–P.D. Inc.*,

24     214 F.3d 1115 (9th Cir. 2000) ......................................................... 15

25 *Ferrellgas, Inc. v. American Premier Underwriters, Inc.*,

26     79 F. Supp. 2d 1160 (C.D. Cal. 1999) ........................................... 24

27 *H.J. Inc. v. Nw. Bell Tel. Co.*,

28     492 U.S. 229, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989) .............. 14

Quintana Law
Group, APC

*Home Sav. Bank, F.S.B. by Resolution Trust Corp. v. Gillam*,
  952 F.2d 1152 (9th Cir. 1991) ..................................................................... 22

*In re Catt*,
  368 F.3d 789 (7th Cir. 2004) ......................................................................... 11

*Jones v. Zimmer*,
  No. 2:12-cv-01578-JAD-NJK, 2016 WL 1122852
  (D. Nev. Mar. 22, 2016) .................................................................................. 9

*Mid–Am. Tablewares, Inc. v. Mogi Trading Co.*,
  100 F.3d 1353 (7th Cir. 1996) ......................................................................... 9

*Milgard Tempering, Inc. v. Selas Corp. of America*,
  902 F.2d 703 (9th Cir. 1990) ........................................................................... 8

*Morales v. City of San Rafael*,
  96 F.3d 359 (9th Cir. 1995) ........................................................................... 15

*Pacific Mut. Life Ins. Co. v. Haslip*,
  499 U.S. 1, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991)...................................11-12

*Oak Harbor Freight Lines, Inc. v. Sears Roebuck & Co.*,
  513 F.3d 949 (9th Cir. 2008) ......................................................................... 17

*Portland 76 Auto/Truck Plaza Inc. v. Union Oil Co.*,
  153 F.3d 938 (9th Cir. 1998) ........................................................................... 6

*Purcell v. United States*,
  1 F.3d 932 (9th Cir. 1993) ............................................................................. 20

*ReliaStar Life Ins. Co. v. IOA Re, Inc.*,
  303 F.3d 874 (8th Cir. 2002) ...................................................................... 7, 23

*Shaw, Savill, Albion & Co. v. The Fredericksburg*,
  189 F.2d 952 (2d Cir. 1951)........................................................................ 7, 23

*Signatures Network, Inc. v. Estefan*,
  2005 WL 151928 (N.D.Cal. 2005) ................................................................. 15

*State Farm Mut. Auto. Ins. Co. v. Campbell*,
  538 U.S. 408, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003)............................... 12

Quintana Law
Group, APC

*Story Parchment Co. v. Paterson Parchment Paper Co.*,
    282 U.S. 555, 51 S.Ct. 248, 75 L.Ed. 544 (1931)............................................9

*United Steelworkers of Amer. v. Phelps Dodge Corp.*,
    896 F.2d 403 (9th Cir. 1990) ........................................................................16

*Welch v. Metro. Life Ins. Co.*,
    480 F.3d 942 (9th Cir. 2007) .......................................................................18


CALIFORNIA STATE CASES

*A&M Produce Co. v. FMC Corp.*,
    135 Cal.App. 3d 473, 186 Cal.Rptr. 114 (1982)...........................................21

*Altavion, Inc. v. Konica Minolta Systems Laboratory, Inc.*,
    226 Cal.App.4th 26, 171 Cal.Rptr.3d 714 (2014) .......................................22

*Anselmo v. Sebastiani*,
    219 Cal. 292, 26 P.2d 1, 5 (1933) ................................................................19

*Cortez v. Purolator Air Filtration Products Co.*,
    23 Cal.4th 163, 96 Cal.Rptr.2d 518, 999 P.2d 706 (2000) ..........................18

*Faigin v. Signature Grp. Holdings, Inc.*,
    211 Cal.App.4th 726, 150 Cal.Rptr.3d 123 (2012) ......................................21

*Leff v. Gunter*,
    33 Cal.3d 508, 189 Cal.Rptr. 377, 658 P.2d 740 (1983) ..............................19

*Lewis C. Nelson & Sons, Inc. v. Clovis Unified Sch. Dist.*,
    90 Cal.App.4th 64, 108 Cal.Rptr.2d 715 (2001) ....................................18, 20

*Lewis Jorge Constr. Mgmt., Inc. v. Pomona Unified Sch. Dist.*,
    34 Cal.4th 960, 22 Cal.Rptr.3d 340, 102 P.3d 257 (2004) ...................5, 6, 8

*McConnell v. Pac. Mut. Life Ins. Co. of Cal.*,
    205 Cal.App.2d 469, 24 Cal.Rptr. 5 (1962)..................................................19

*Michelson v. Hamada*,
    29 Cal.App.4th 1566, 36 Cal.Rptr.2d 343 (1994) ..................................21, 22

Quintana Law
Group, APC

*Mitchell v. Clarke*,
        71 Cal. 163, 11 P. 882 (1886) ........................................................ 6

*N. Oakland Med. Clinic v. Rogers*,
        65 Cal.App. 4th 824, 76 Cal.Rptr.2d 743 (1998) ......................... 20

*Nickerson v. Stonebridge Life Ins. Co*.,
        219 Cal.App.4th 188, 161 Cal.Rptr.3d 629 (2013) ...................... 12

*Robinson Helicopter Co., Inc. v. Dana Corp*.,
        34 Cal.4th 979, 22 Cal.Rptr.3d 352, 102 P.3d 268 (2004) .............. 10-11

*Sargon Enterprises, Inc. v. University of Southern California*,
        55 Cal.4th 747, 149 Cal.Rptr.3d 614, 288 P.3d 1237 (2012) ......... 8

*Vogelsang v. Wolpert*,
        227 Cal.App.2d 102, 38 Cal.Rptr. 440 (1964) .............................. 21


FEDERAL STATUTES AND REGULATIONS

18 U.S.C. § 1964(c) 14, 15 ........................................................................ 21

CALIFORNIA STATUTES AND REGULATIONS

Cal. Civ. Code § 33001964) ...................................................................... 11

Cal. Civ. Code, § 3294(c) .......................................................................... 12

Cal. Civ. Code § 3294(c)(3) ...................................................................... 12

Cal. Civ. Code § 3287(a) ..................................................................... 18, 20

Cal. Civ. Code § 3287(b) ..................................................................... 18, 20

Cal. Civ. Code § 3288 ................................................................................ 21

Quintana Law
Group, APC

1

## **<u>MEMORANDUM OF POINTS AND AUTHORITIES</u>**

2
3
4
5

This motion is simple and straightforward and attempts to consolidate the two rulings adjudicating this case into one, final judgment and to account for statutory damages, pre-judgment interest, attorneys' fees and costs, and unpaid monetary sanctions.

6
7
8
9
10
11
12
13
14
15

First, on December 9, 2019, this Court issued on an Order accepting in full the Report And Recommendation of Magistrate Judge Karen Scott in which Magistrate Judge Scott recommended the imposition of terminating sanctions against Plaintiffs and Counter-Defendant Vestis LLC ("Vestis") and Ginve Modas, SL ("Ginve Modas").  Dkt. 175.  Accordingly, this Court entered Default Judgment against Vestis and Ginve Modas on their Complaint and also against them on both of the Second Amended Counterclaims separately brought by Counter-Claimants Caramel Sales, Ltd. ("Caramel Sales"), TET ApS ("TET"), David Popeck ("Popeck") and Thomas Schmidt ("Schmidt", or collectively with TET, Caramel Sales and Popeck, the "Counter-Claimants").  *Id.*;[1] *see* Dkts. 55, 56.

16
17
18

Second, on February 19, 2020, this Court granted Counter-Claimants' Motion for Partial Summary Judgment against Counter-Defendants Morgan Recchia and Serge Recchia.  Dkt. 206.  Among other things, the Court found that:

19
20
21
22
23

> Because Counter-Defendants have conceded liability as to each of the claims at issue in the instant Motion, and because none of the asserted defenses are applicable, the Court hereby GRANTS Counter-Claimants' Motion for Partial Summary Judgment. Any judgment issued on this order will be awarded against

24

25
26
27
28

---

[1]    The Court also awarded Counter-Claimants/Defendants $9,960.00 in reasonable expenses incurred in in filing the motion for terminating or evidentiary sanctions.  Dkt. 175.  These monetary sanctions remain unpaid and, as discussed later in this Motion, Counter-Claimants requests that these, and other, unpaid monetary sanctions be included as part of the Final Judgment.

1
2
3
4
5
6

> Counter-Defendants Serge and Morgan Recchia (and, to the extent this order overlaps with the prior terminating sanctions, against Counter-Defendants Vestis, LLC and Ginve Modas SL) in accordance with joint and several liability; Counter-Claimants will be responsible for equitably apportioning among themselves any damages they are able to collect.

7  *Id.*

8  Then, as the Court knows, beginning March of 2020, the COVID-19 epidemic
9  swept the country, including the State of California.  The pandemic, among other
10  regrettable things, forced statewide "Stay-At-Home" orders and court closures.
11  During that time, both Counter-Claimants and their counsel experienced and
12  overcame a series of financial and physical health dilemmas.

13  The Counter-Claimants now bring this motion for a Final Judgment which
14  includes the following awards: (1) general and compensatory damages, (2)
15  consequential damages, (3) punitive damages or, in the alternative, treble damages
16  under the Federal RICO Act, (4) attorneys' fees and costs under the Federal RICO
17  Act, (5) prejudgment interest, and (6) for unpaid monetary sanctions levied against
18  Counter-Defendants in this case.  Each of these awards is presented in turn.

19  The proposed Final Judgment is broken down into Parts I and II.  Part I, and
20  the bulk of this motion, concerns the claims brought by the Counter-Claimants,
21  collectively, in connection with their successful claims for Breach of Contract,
22  Fraud, Federal RICO Act, Negligent Interference and Aiding and Abetting the
23  Commission of Fraud.  Part II concerns the additional and separate Breach of
24  Contract claim brought by Counter-Claimants Caramel Sales and Popeck against
25  Cross-Defendants.

26  ///
27  ///
28  ///

Quintana Law
Group, APC

# I.
## DAMAGES REQUESTED FOR ALL THE COUNTER-CLAIMANTS COLLECTIVELY

### A. Counter-Claimants Request Actual, Compensatory and Consequential Damages for Breach of Contract.

Contractual damages are of two types – general damages (sometimes called direct damages) and special damages (sometimes called consequential damages). *Lewis Jorge Constr. Mgmt., Inc. v. Pomona Unified Sch. Dist*., 34 Cal.4th 960 (2004) (describing general and consequential damages). Counter-Claimants respectfully request both forms of contractual damages in this case.

#### 1. Compensatory/General Damages.

General damages are often characterized as those that flow directly and necessarily from a breach of contract, or that are a natural result of a breach. Cal.Civ.Code, § 3300 (damages "which, in the ordinary course of things, would be likely to result" from breach); *Mitchell v. Clarke* (1886) 71 Cal. 163, 167–168, 11 P. 882 (general damages are those that naturally and necessarily result from breach). Because general damages are a natural and necessary consequence of a contract breach, they are often said to be within the contemplation of the parties, meaning that because their occurrence is sufficiently predictable the parties at the time of contracting are "deemed" to have contemplated them. *Lewis Jorge Constr. Mgmt., Inc.*, 34 Cal.4th at 968.

Here, Counter-Claimants seek **€1,116,513** (or **$1,313,242.50** following the application of the "Breach Day Rule", as described below) in general and compensatory damages, which is the amount given to and misappropriated by Counter-Defendants and which they never repaid. This is the stated amount demanded by Counter-Claimants in their operative pleadings. *See* Dkts. 55 (¶¶60, 63) and 56 (¶¶41, 44). Damages must be proven to a "reasonable certainty." *In re Catt*, 368 F.3d 789, 793 (7th Cir.2004); *Portland 76 Auto/Truck Plaza Inc. v. Union*

*Oil Co.*, 153 F.3d 938, 947 (9th Cir.1998).  This amount is supported by Answers filed by the Cross-Defendants in which each Cross-Defendant admitted to collectively receiving €1,116,513.  *See* Dkts. 103–2 (Answer of Ginve Modas and Vestis, ¶19) and 140 (Answer of the Recchias, ¶19).  This amount is also supported by the probative testimony and documentary evidence submitted by the Counter-Claimants.  *See e.g.* Dkt. 177–2 (Schmidt Decl., ¶¶9, 11–17; Popeck Decl., ¶9.)

### a.  This Court Should Apply the "Breach Day Rule" To Convert The Award From Euro to U.S. Dollars.

With regards to the conversion of **€1,116,513** in consequential damages to U.S. Dollars, the U.S. Supreme Court has set forth two rules with respect to the date that should be used to determine the applicable exchange rate when converting an award of foreign currency into dollars. Under the first rule, known as the "breach day rule," the applicable exchange rate is the one that was in effect on the date that the defendant breached its obligations to the plaintiff.  *ReliaStar Life Ins. Co. v. IOA Re, Inc.*, 303 F.3d 874, 883 (8th Cir.2002).  Under the second rule, known as the "judgment day rule," the applicable exchange rate is the prevailing rate on the date that the court enters judgment for the plaintiff.  *ReliaStar Ins. Co.*, 303 F.3d at 883. The "breach day rule" is applied where there is a "breach of an obligation performable in foreign currency in the United States." *Shaw, Savill, Albion & Co. v. The Fredericksburg*, 189 F.2d 952, 955 (2d Cir.1951).  The "judgment day rule" is applied "where the obligation is performable in a foreign country in the money of that country." *Id.*  The judgment day rule is based "on the ground that 'an obligation in terms of the currency of that country takes the risk of currency fluctuation.' " *Id.* (*citing Deutsche Bank*, 272 U.S. at 519).

Here, Vestis and Ginve Modas – who commenced this lawsuit is Orange County Superior Court before the Counter-Claimants removed it to this Court – alleged that the contracts with Counter-Defendants were executed in California.

1  Dkt. 1, Page ID#: 8–11.  Further, the last payment delivered to Counter-Defendants

2  occurred on August 22, 2017.  Dkt. 177–2 (Schmidt Decl., ¶¶ 11–17, in support of

3  Summary Judgment, Page ID#: 9679–9681).  The U.S. Dollar to Euro exchange rate

4  on that date was 1 Euro = 1.1762 U.S. Dollar.  Quintana Decl., ¶10, Exh. B.  Thus,

5  the value of €1,116,513 on August 22, 2017, in U.S. Dollars was **$1,313,242.50**

6  (€1,116,513 x 1.1762.)

### 2. Consequential/Special Damages For Breach of Contract or Tort Claims.

The Counter-Claimants also seek in €3,998,487 consequential or special damages in this case, either in connection with their contract or tort claims.  Under California law, consequential or special damages "are those losses that do not arise directly and inevitably from any similar breach of any similar agreement. Instead, they are secondary or derivative losses arising from circumstances that are particular to the contract or to the parties."  *Lewis Jorge Constr. Mgmt., Inc.*, 34 Cal.4th at 968.  Consequential damages are recoverable only

> if the special or particular circumstances from which they arise were actually communicated to or known by the breaching party (a subjective test) or were matters of which the breaching party should have been aware at the time of contracting (an objective test).

*Id.* at 968–69. Special damages are thus losses that were foreseen or were reasonably foreseeable when the contract was formed. *Id.* at 970 (citing *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal.4th 503, 515 (1994)).

Further, lost profits may be recovered as consequential damages so long as "1) they are within the contemplation of the parties at the time the contract was made, 2) they are the proximate cause of defendant's breach and 3) they are proven with reasonable certainty." *Milgard Tempering, Inc. v. Selas Corp. of America*, 902 F.2d 703, 710 (9th Cir.1990).  The plaintiff need establish with certainty the "fact of

damage," not the exact amount suffered. *Id.*  Further, A party must prove lost profits with certainty but only to a degree that is reasonable; in other words, proof that is to some degree uncertain. *See Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 774–775.

Finally, courts have applied several "modifying principles" to avoid the "overly rigid application of the 'reasonable certainty' requirement." *Mid–Am. Tablewares, Inc. v. Mogi Trading Co.*, 100 F.3d 1353, 1365 (7th Cir.1996).  Where a defendant's wrongdoing makes quantification difficult, for example, courts have allowed plaintiffs additional leeway in estimating their amount of damages. *Id.*; *Domanus v. Lewicki*, 742 F.3d 290, 303 (7th Cir.2014); *see also Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555, 563, 51 S.Ct. 248, 75 L.Ed. 544 (1931) ("Where the tort itself is of such a nature as to preclude the ascertainment of the amount of the damages with certainty ... it will be enough if the evidence show[s] the extent of the damages as a matter of just and reasonable inference, although the result be only approximate.").

Here, the Counter-Claimants seek an additional amount of **$4,703,020.40** in consequential damages.  As Schmidt testified in his declaration filed in support of the Counter-Claimants' Motion for Partial Summary Judgment:

> Based on the representations made by Serge Recchia and Morgan Recchia regarding the sale of the approximately 186,000 units of "Levis" branded jeans, in or about July of 2017, David Popeck and his company, Caramel Sales (in conjunction with our joint venture agreement) and I negotiated and entered into two transactions with Vente-Privee.com, a large apparel company based in France, to sell the 186,000 units of "Levis" branded jeans. The first transaction involved the sale of 62,930 units of "Levis" branded jeans for which TET paid a total amount of €1,116,513 to Ginve Modas. With

1    regards to these 62,930 units, Vente-Privee.com agreed to pay

2    €1,730,575. Attached to my declaration as Exhibit BF is a

3    Proforma Invoice that was delivered to Vente-Privee.com,

4    which memorialized this first transaction. The second

5    transaction with Vente-Privee.com involved the remaining

6    123,070 units of "Levis" branded jeans: 186,000 "Levis"

7    brands jeans that Serge Recchia and Morgan Recchia promised

8    TET, me, Caramel and David Popeck, through their companies,

9    minus the 62,930 units for which TET already paid. David and

10    his company, Caramel Sales, and I (again through our joint

11    venture agreement) negotiated a transaction with Vente-

12    Privee.com regarding the remaining 123,070 units. Specifically,

13    Vente-Privee.com agreed to pay us €3,384,425 for these

14    remaining 123,070 units. Attached to my declaration as Exhibit

15    BG is a true and correct copy of a Proforma Invoice that

16    memorializes the second transaction with Vente-Privee.com.

17 Dkt. 177–2 (Schmidt Decl., ¶¶38, and Exhibits BF and BG thereto; Page ID#: 9686

18 – 9687). In other words, Counter-Claimants TET and Caramel Sales had entered

19 into an agreement to sell 186,000 pairs of Levi jeans with a European retailer for a

20 total of €5,115,000. Thus, since Counter-Claimants paid the Counter-Defendants

21 €1,116,513, the Counter-Claimants' lost profits on this transaction was at least

22 €3,998,487 (€5,115,000 – €1,116,513).

23      Furthermore, Counter-Claimants' request for €3,998,487 in consequential

24 damages is supported not just based on their breach of contract claim but also as a

25 measure of their successful fraud damages. A party can base a fraud claim for

26 breaches of contractual obligations so long as it can show that the party made false

27 promises of meeting certain contractual obligations that it never intended on

28 keeping; in other words, that the defendant induced the plaintiff into entering the

contract. *See Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal.4th 979, 989 (2004).  As the California Supreme Court explained in *Robinson Helicopter*,

> In pursuing a valid fraud action, a plaintiff advances the public interest in punishing intentional misrepresentations and in deterring such misrepresentations in the future. Because of the extra measure of blameworthiness inhering in fraud, and because in fraud cases we are not concerned about the need for 'predictability about the cost of contractual relationships', fraud plaintiffs may recover 'out-of-pocket' damages in addition to benefit-of-the bargain damages. In addition, California also has a legitimate and compelling interest in preserving a business climate free of fraud and deceptive practices.

*Id*. at 992 (citations omitted).

### a.    This Court Should Apply the "Breach Day Rule" To Convert The Award From Euro to U.S. Dollars.

Under the "breach day rule, the conversion of **€3,998,487** in consequential damages to U.S. Dollars would amount to **$4,703,020.40**.  Again, the last payment delivered to Counter-Defendants occurred on August 22, 2017, and the U.S. Dollar to Euro exchange rate on that date was 1 Euro = 1.1762 U.S. Dollar.  Thus, the value of €3,998,487 on August 22, 2017, in U.S. Dollars was **$4,703,020.40** (€3,998,487 x 1.1762).

### B. Counter-Claimants Request Punitive Damages.

This Court expressly found that the Counter-Claimants are entitled to an award of punitive damages.  *See* Dkt. 206 ("The Court thus finds that punitive damages should be entered against Counter-Defendants on Counter-Claimants' causes of action for fraud, aiding and abetting fraud, negligent misrepresentation, and aiding and abetting negligent misrepresentation").  The Counter-Claimants now address the question of the amount of punitive damages to be granted. The Supreme

Court recognized in *Cooper Industries, Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424, 121 S.Ct. 1678, 149 L.Ed.2d 674 (2001), that punitive damages serve a broader function that compensatory damages; they are aimed at deterrence and retribution. *Id.* at 432; *see also Pacific Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 19, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991) ("[P]unitive damages are imposed for purposes of retribution and deterrence").

"Punitive damages may be imposed under state law to further a state's legitimate interests in punishing unlawful conduct and deterring its repetition." *Nickerson v. Stonebridge Life Ins. Co*., 219 Cal.App.4th 188, 203 (2013) (citations and quotations omitted). Malice is "conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others." Cal.Civ.Code, § 3294(c)(1). Oppression is "despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights." Cal.Civ.Code, § 3294(c)(2). " 'Fraud' means an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury." Cal.Civ.Code § 3294(c)(3).

The Supreme Court observed "the most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003).  The Supreme Court noted,

> We have instructed courts to determine the reprehensibility of a defendant by considering whether: the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident;

1    and the harm was the result of intentional malice, trickery, or

2    deceit, or mere accident.

3    *Id.* Here, as Counter-Claimants demonstrated through, among other filings, their

4    Motion for Partial Summary Judgment and supporting evidence, that Morgan

5    Recchia and Serge Recchia, father and son, took Counter-Claimants for "a ride":

6    The evidence proved that the Recchias told lies about their contacts and capabilities

7    to get the Counter-Claimants to pay over a million Euros to the companies the

8    Recchias own and exclusively control, and treat as their alter egos, in return for the

9    Counter-Defendants' promises to provide specific goods that the Counter-

10   Defendants never had, to be sold in Europe with permissions that the Counter-

11   Defendants knew they could not deliver. Again, as the evidence submitted to this

12   Court made clear that the Recchias knew that they were peddling lies before their

13   companies entered into any agreements with the Counter-Claimants, and before they

14   got their hands on the Counter-Claimants' money.

15       Once they had the Counter-Claimants' money in their possession, however,

16   the goal of the Counter-Defendants' collective enterprise shifted from defrauding

17   the Counter-Claimants out of their money, and into an effort to keep that money,

18   despite delivering none of the goods or services they had been paid to provide, with

19   the Recchias repeatedly making knowingly false statements and providing false,

20   fabricated documents in an ongoing effort to delay the Counter-Claimants'

21   discovery of their fraud for as long as possible.

22       Moreover, the evidence proved that the lies and falsehoods perpetrated by the

23   Recchias in that effort were varied and continued over an extended period of time:

24   the Recchias lied about the existence of the goods they had agreed to sell, and

25   provided false, fabricated shipping, insurance and customs documents to the

26   Counter-Claimants to create the illusion that the goods actually existed, and would

27   be delivered; the Recchias even provided the Counter-Claimants with a falsified

28   letter on the letterhead of an executive from Levi Strauss & Co., purporting to give

the Counter-Claimants authority to sell the (non-existent) goods in Europe, which the Counter-Defendants had been obliged to obtain under the contract entered into between Vestis), Ginve Modas, and third party "American Brands", on the one hand, and Counter-Claimants on the other; and, the Recchias perpetuated their fraudulent enterprise through a pattern of repeated emails and text messages that constituted wire fraud, evidence which was submitted to the Court. The simple fact is that, between the admissions made in their pleadings, the evidence produced in this case, and the sworn depositions of various third parties, it is undisputable that the Recchias' ongoing representations to the Counter-Claimants were false, and the documents the Recchias had transmitted were fabricated.

Based on the foregoing, Counter-Claimants request that this Court award them **$18,048,788.70** in punitive damages; which is three times the sum of amount of compensatory and consequential damages: [$**1,313,242.50** (compensatory damages, as calculated above) + **$4,703,020.40** (consequential damages, as calculated above)] multiplied by 3.

### C. Counter-Claimants Request Treble Damages Under The Federal RICO Act.

In the alternative to punitive damages, the Counter-Claimants request treble damages under the Federal RICO Act.  The Counter-Claimants contend they submitted persuasive evidence that was credible and probative.  This Court found the Recchias liable for violating the Federal RICO Act.  Dkt. 206 (Page 5). The Federal RICO Act provides that

> [a]ny person injured in his business or property by reason of a violation of section 1962 of [the act] may sue therefore in any appropriate United States district court and shall recover threefold the damages he sustains.

18 U.S.C. § 1964(c); *see also H.J. Inc. v. Nw. Bell Tel. Co*., 492 U.S. 229, 233 (1989) ("[A] person found in a private action to have violated RICO is liable for

1  treble damages....”).

2  Therefore, the Counter-Claimants respectfully request an award of treble

3  damages against Counter-Defendants, jointly and severally, in the amount of

4  **$18,048,788.70** (**$1,313,242.50** [compensatory damages, as detailed above] +

5  **$4,703,020.40** [consequential damages, as detailed above] x 3). The Counter-

6  Claimants posit that these damages are proportional to the harm caused by Counter-

7  Defendants' fraudulent and egregious conduct.

8  **D. Counter-Claimants Request Attorney's Fees Under The Federal**

9  **RICO Act.**

10  The Counter-Claimants also requests attorney's fees in the amount of

11  **$464,988.00**. Under the Federal RICO Act, a prevailing plaintiff "shall" recover

12  "the cost of the suit, including a reasonable attorney's fee." 18 U.S.C. § 1964(c).

13  For this reason, Counter-Claimants respectfully request that it be awarded for

14  attorney's fees.

15  *1. Legal Standard.*

16  The Ninth Circuit affords trial courts considerable discretion in determining

17  the reasonableness of attorney's fees and costs. *Gates v. Deukmejian*, 987 F.2d

18  1392, 1398 (9th Cir.1992). Here, the Counter-Claimants request **$464,988.00** in

19  attorney's fees. This amount reflects the legal fees that the Counter-Claimants

20  incurred from approximately November of 2018, through March of 2020. The

21  Counter-Claimants support their request for attorney's fees with a declaration and

22  records itemizing the work performed and fees incurred. *See* Quintana Decl., ¶9;

23  Exh. A.

24  In computing attorney's fees pursuant to contract under California or federal

25  law, courts follow the "lodestar" approach. *Signatures Network, Inc. v. Estefan*,

26  2005 WL 151928 (N.D.Cal.2005). Under this method, the court multiplies the

27  reasonable hourly rate by the number of hours reasonably expended in the litigation.

28  *Morales v. City of San Rafael*, 96 F.3d 359, 363–65 (9th Cir.1995). In calculating

the lodestar figure, the court considers the following factors: (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill required to perform the legal service properly; (4) the preclusion of employment to the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed on the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case, if any; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Fischer v. SJB–P.D. Inc*., 214 F.3d 1115, 1119 n. 3 (9th Cir.2000).

### 2. Reasonable Attorneys' Hourly Rate.

The first step in setting the reasonable attorney's fees is to determine a reasonable hourly rate. The controlling test for determining a reasonable hourly rate requires the rate to be "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 896 n. 11, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984); *Welch v. Metro. Life Ins. Co*., 480 F.3d 942, 946 (9th Cir.2007). The prevailing market rate in the community is indicative of a reasonable hourly rate.

Here, the Counter-Claimants were represented throughout the litigation by attorneys Andres F. Quintana and John M. Houkom of the Quintana Law Group, APC.   Mr. Quintana's hourly rate for this matter was $300; and Mr. Houkom's hourly rate for this matter was $240.    Quintana Decl., ¶4.   As one possible benchmark, Magistrate Judge Karen Scott in this case expressly found that:

> the rate of $300 per hour for Mr. Andres F. Quintana and $240 per hour for Mr. John M. Houkom are in line with, and actually significantly lower than, the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.

Dkt. 122 (Page 9). The Ninth Case of *Pulido* provides another useful benchmark in

determining reasonable hourly rates for Los Angeles practitioners. *See United Steelworkers of Amer. v. Phelps Dodge Corp*., 896 F.2d 403, 406 (9th Cir.1990). In *Pullido*, the court approved hourly rates of $380 and $400 for 1999 law school graduates. Mr. Quintana graduated from law school in 1997 and Mr. Houkom graduated from law school in 1999. Quintana Decl., ¶¶3, 4. As such, the Court should find that QLG's rates are reasonable.

### 3. *Reasonable Attorney's Fees.*

The Counter-Claimants request **$464,988.00** in attorney's fees. The Court must determine the number of hours Counter-Claimants' attorneys reasonably expended on the litigation. Here, the Counter-Claimants posit that the time spent was reasonable in light of the nature of the Counter-Claimants' claims (which involved Fraud and the Federal RICO Act), the Cross-Defendants' litigation practices (which caused considerable delay, were dilatory, and resulted in the imposition of over $40,000 in monetary sanctions against them and a Magistrate's recommendation of terminating sanctions as to Counter-Defendants' complaint), the nature of Cross-Defendants' claims (which included fraud and California Trade Secrets Act claim), the number of motions presented to this Court and discovery motions presented to the Magistrate Judge, the number of depositions and subpoenas conducted by Counter-Claimants (which, as described in the Motion for Partial Summary Judgment, yielded astonishing evidence of racketeering and intentional wrongdoing by the Cross-Defendants), and the sweeping and unequivocal results obtained by counsel for the Counter-Claimants in this case.

### 4. *Lodestar Calculation.*

The final step in determining the reasonable attorney's fees is to multiply the number of hours reasonably worked by the reasonable hourly rate for each person who performed the work. Here, that calculation yields a total of **$464,988.00**.

### E. Counter-Claimants Request Prejudgment Interest.

The Counter-Claimants also respectfully request prejudgment interest on their

1  contract and tort claims and under the Federal RICO Act.  Where state law provides

2  the rule of decision, it is the duty of federal courts to ascertain and apply that law. *In*

3  *re Exxon Valdez*, 484 F.3d 1098, 1100 (9th Cir.2007).  Prejudgment interest is a

4  substantive part of a plaintiff's claim and not merely a procedural mechanism; thus,

5  state law governs entitlement to it as well as its computation, unless preempted by

6  federal law.  *Id*. at 1101. "In diversity actions, state law determines the rate of

7  prejudgment interest, and post-judgment interest is governed by federal law.  *AT&T*

8  *Co. v. United Computer Systems*, 98 F.3d 1209 (9th Cir.1996); *see also Oak Harbor*

9  *Freight Lines, Inc. v. Sears Roebuck & Co*., 513 F.3d 949, 961 (9th Cir.2008).

10  California Civil Code section 3287 states, in pertinent part, that a

11          person who is entitled to recover damages certain, or capable of

12          being made certain by calculation, and the right to recover

13          which is vested in the person upon a particular day, is entitled

14          also to recover interest thereon from that day ....

15  Cal. Civ. Code § 3287(a); *see also*, *Cortez v. Purolator Air Filtration Products Co*.,

16  23 Cal.4th 163, 174–75 (2000).  Section 3287(b) states,

17          "[e]very person who is entitled under any judgment to receive

18          damages based upon a cause of action in contract where the

19          claim was unliquidated, may also recover interest thereon from

20          a date prior to the entry of judgment as the court may, in its

21          discretion, fix, but in no event earlier than the date the action

22          was filed."

23  Cal. Civ. Code § 3287(b); *see Lewis C. Nelson & Sons, Inc. v. Clovis Unified Sch.*

24  *Dist*., 90 Cal.App.4th 64, 71 (2001) ("[T]he distinction between the two subparts [of

25  section 3287] has to do with the nature of the damages—liquidated and

26  unliquidated—for which interest may be awarded ....");

27      Here, the Counter-Claimants seek an award of prejudgment interest in the

28  amount of **$548,683.56**, as described below.

1

2

### 1. *Mandatory Prejudgment Interest Under California Civil Code Section 3287(a).*

3

4

5

6

7

8

9

10

11

The Counter-Claimants request mandatory prejudgment interest under California Civil Code § 3287(a). Section 3287(a) allows recovery of interest from the time the creditor's right to recover "is vested," and "California cases uniformly have interpreted the 'vesting' requirement as being satisfied at the time that the amount of damages become certain or capable of being made certain, not the time liability to pay those amounts is determined." *Evanston Ins. Co. v. OEA*, Inc., 566 F.3d 915, 921 (9th Cir.2009) (collecting cases); *see also Cataphora Inc. v. Parker*, 848 F.Supp.2d 1064, 1072 (N.D.Cal.2012) (discussing California cases and reaching same conclusion).

12

13

14

15

16

17

> Damages are deemed certain or capable of being made certain within the provisions of subdivision (a) of section 3287 where there is essentially no dispute between the parties concerning the basis of computation of damages if any are recoverable but where their dispute centers on the issue of liability giving rise to damage.

18

19

20

21

22

23

24

25

26

27

28

*Leff v. Gunter*, 33 Cal.3d 508, 189 Cal.Rptr. 377, 658 P.2d 740, 748 (1983) (citation omitted); *see McConnell v. Pac. Mut. Life Ins. Co. of Cal*., 205 Cal.App.2d 469 (1962) ("The crucial question is not how the damages are calculated, but whether the debtor is able to compute them.").  "If the amount of the indebtedness or the amount owing can be calculated and determined from the statements rendered by the plaintiff[ ] to the defendants, and that statement is found to be true and correct, it is a matter of mere calculation." *Anselmo v. Sebastiani*, 219 Cal. 292, 26 P.2d 1, 5 (1933) (*per curiam*).  Consequently, prejudgment interest under section 3287(a) becomes available as of the day the amount at issue becomes "calculable ... mechanically, on the basis of uncontested and conceded evidence," and it is available "as a matter of right," rather than at the discretion of a court. *Id*. 189

Cal.Rptr. 377, 658 P.2d at 748, 749.

Here, it is undisputed that the Counter-Defendants received four payments totaling €1,116,513.  *See* Dkts. 103–2 (Answer of Ginve Modas and Vestis, ¶19) and 140 (Answer of the Recchias, ¶19).  This amount is also supported by the probative testimony and documentary evidence submitted by Counter-Claimants. *See e.g.* Dkt. 177–2 (Schmidt Decl., ¶¶9, 11–17; Popeck Decl., ¶9.)  The fourth and final payment was transferred on **August 22, 2017**.  Dkt. 177–2 (Schmidt Decl., ¶¶ 11–17, in support of Summary Judgment, Page ID#: 9679–9681). In other words, by August 22, 2017, the €1,116,513 has become vested.  Thus, damages can reasonably be calculated from **August 22, 2017**, the date of the last payment delivered to Counter-Defendants.  Dkt. 177–2 (Schmidt Decl., ¶¶ 11–17, in support of Summary Judgment, Page ID#: 9679–9681).

> ### a. **This Court Should Apply the "Breach Day Rule" As The Start Date For The Calculation of Prejudgment Interest.**

Again, the U.S. Dollar to Euro exchange rate on August 22, 2017 was 1 Euro = 1.1762 U.S. Dollar.  Quintana Decl.¶10, Exh. A.  Thus, the value €1,116,513 on August 22, 2017, was $**1,313,242.50** in U.S. Dollars (€1,116,513 x 1.1762).  The next step is to calculate prejudgment using the $1,313,242.50 amount from August 22, 2017.

> ### b. **California Law Provides For An Interest Rate of Ten Percent Per Annum.**

Under California Civil Code § 3289, the applicable rate of interest is 10 percent per annum after a breach.  Thus, from August 22, 2017 to October 25, 2021, the amount of prejudgment on $1,313,242.50, based on 10% simple interest, is **$548,683.56**.  Counter-Claimants request that this amount be included in the Final Judgment.

> ### 2. *Alternatively, Counter-Claimants Seek Discretionary Prejudgment Interest Under Section 3287(b).*

Counter-Claimants requests that even if the Court finds that the amount of

damages was not capable of calculation under California Civil Code § 3287(a), thereby requiring prejudgment interest, the Court should nonetheless use its discretionary authority to grant prejudgment interest under California Civil Code § 3287(b). Under California Civil Code § 3287(b), the trial court "has discretion to decide whether prejudgment interest should be awarded on an unliquidated contractual claim." *N. Oakland Med. Clinic v. Rogers*, 65 Cal.App.4th 824, 829 (1998). Thus, the threshold question is whether Counter-Claimants' claim was "based upon a cause of action in contract." Cal. Civ. Code § 3287(b). Federal courts have discretion to impose prejudgment interest in consideration of the equities of the case. "Awards of pre-judgment interest are governed by considerations of fairness and are awarded when it is necessary to make the wronged party whole." *Purcell v. United States*, 1 F.3d 932, 943 (9th Cir.1993) (citation omitted); *see Lewis C. Nelson & Sons, Inc.*, 90 Cal.App.4th at 71 (Section 3287(b) "seeks to balance the concern for fairness to the debtor against the concern for full compensation to the wronged party."). Prejudgment interest is intended "to compensate for the loss of use of money due as damages from the time the claim accrues until judgment is entered[.]" *Barnard v. Theobald*, 721 F.3d 1069, 1078 (9th Cir.2013) (quoting *Schneider v. Cty. of San Diego*, 285 F.3d 784, 789 (9th Cir.2002)). The court decides whether to award prejudgment interest "in light of the particular facts and circumstances in the case." *Faigin v. Signature Grp. Holdings, Inc.*, 211 Cal.App.4th 726, 751–752 (2012). Courts weighing whether to award discretionary prejudgment interest under section 3287(b) have considered, among other things, whether awarding interest will penalize the defendant for litigating a bona fide dispute. *See A&M Produce Co. v. FMC Corp.*, 135 Cal.App.3d 473, 498 (1982).

Here, this Court recognized the Cross-Defendants' egregious conduct. *See* Dkt. 206 (Page 8: "The Court thus finds that punitive damages should be entered against Counter-Defendants on Counter-Claimants' causes of action for fraud, aiding and abetting fraud, negligent misrepresentation, and aiding and abetting

1  negligent misrepresentation. (The RICO claims provide for treble damages by

2  statute.)").  Thus, the Counter-Claimants contend that even if they are not entitled to

3  prejudgment interest under California Civil Code § 3287(a), the Court should, in its

4  discretion, award prejudgment interest under § 3287(b) beginning on August 22,

5  2017.

6  ### 3. Discretionary Interest for Fraud.

7  California Civil Code § 3288 provides that in actions for breach of an

8  obligation not arising from contract, and in every case of fraud, malice, or

9  oppression, interest may be given in the discretion of the trier of fact. *See also*

10  *Vogelsang v. Wolpert*, 227 Cal.App.2d 102, 125 (1964) ("It is, of course, well

11  settled that interest may be awarded in a fraud action under Civil Code, § 3288, in

12  the discretion of the trier of fact.").  In fraud cases, interest may accrue from the

13  time the plaintiff is damaged on the basis of the defendant's fraud.  *See Michelson v.*

14  *Hamada* (1994) 29 Cal.App.4th 1566, 1588 (1994). Courts have upheld an annual

15  interest rate of seven percent, for example, in similar situations.  *See*, *e.g.*, *id.* at

16  1585; *Altavion, Inc. v. Konica Minolta Systems Laboratory, Inc.*, 226 Cal.App.4th

17  26, 69–70 (2014).   Thus, the Counter-Claimants respectfully request, in the

18  alternative, that this Court exercise its discretion and award them prejudgment

19  interest based on their successful fraud claims.

20  ### 4. Discretionary Interest for Federal RICO Act Violation.

21  In the alternative, the Counter-Claimants also requests prejudgment interest in

22  the amount of **$548,683.56**, based on their successful Federal RICO Act claim.  This

23  figure represents the occurred interest on the base damages.   An award of

24  prejudgment interest on Counter-Claimants' RICO claim is also within the Court's

25  sound discretion. *See Home Sav. Bank, F.S.B. by Resolution Trust Corp. v. Gillam*,

26  952 F.2d 1152, 1165 (9th Cir.1991) ("The award of prejudgment interest in a case

27  arising under federal law rests within the sound discretion of the court.") (citation

28  omitted); *see also Aetna Cas. Sur. Co. v. P & B Autobody*, 43 F.3d 1546, 1571 (1st

Cir.1994) (decision as to whether to award prejudgment interest under RICO is left to district court's discretion).

### F. Counter-Claimants Request Award For Unpaid Litigation Sanctions.

Finally, the Counter-Claimants seek to add to the Final Judgment the unpaid discovery sanctions that were previously awarded by Magistrate Judge Karen Scott and this Court, but remain unpaid. Specifically, on September 19, 2019, Magistrate Judge Scott awarded the Counter-Claimants a total of $30,906.00 in discovery sanctions in connection with the Counter-Claimants' five discovery motions. Dkt. 122. On December 12, 2019, this Court adopted Judge Scott's recommendation that Counter-Defendants be ordered to pay the Counter-Claimants an additional $9,960.00 in reasonable expenses incurred in the filing of the motion for terminating sanctions. *See* Dkts. 175, 128. Again, these amounts were never paid to the Counter-Claimants. Quintana Decl., ¶12. Thus, the Counter-Claimants request a total of **$40,866.00** to be included in the Final Judgment.

## II.
## ADDITIONAL DAMAGES REQUESTED BY COUNTER-CLAIMANTS CARAMEL SALES AND POPECK

In addition to the damages to the damages sought by all of the Counter-Claimants collectively, Counter-Claimants Caramel Sales and Popeck have separate and additional claims for breach of contract, breach of implied-in-law contract, and quantum meruit which were presented in their Second Amended Counterclaim and which related to a separate transaction concerning the purchase and delivery of Burberry Polo Shirts ("the Burberry Agreement"). *See* Dkt. 55 [¶¶ 1–15, 42–47, 48–52, 53–57].

### A. Counter-Claimants Caramel Sales and Popeck Request Compensatory Damages Related to its Contractual Claim.

Counter-Claimants Caramel Sales and Popeck seek **€455,550.41** in general and compensatory damages, which is the amount given to and misappropriated by

Counter-Defendants and which they never repaid related to the Burberry Agreement. *See* Dkt. 55 (¶47).

With regards to the conversion of **€455,550.41** in compensatory damages to U.S. Dollars, the Court should apply the "judgment day rule," since the obligation is performable in a foreign country in the money of that country. *Shaw, Savill, Albion & Co.*, 189 F.2d at 952. Again, under the "judgment day rule," the applicable exchange rate is the prevailing rate on the date that the court enters judgment for the plaintiff. *ReliaStar Ins. Co.*, 303 F.3d at 883. As a touchstone, Counter-Claimants Caramel Sales and Popeck will use September 20, 2021, a few days before this Motion for Final Judgment is filed. The U.S. Dollar to Euro exchange rate on September 20, 2021 was 1 Euro = 1.1734 U.S. Dollar. Quintana Decl., ¶11, Exh. C. Thus, the value €455.550.41 on September 20, 2021, was **$534,542.85** in U.S. Dollars (€455.550.41 x 1.1734).

### B. Counter-Claimants Caramel Sales and Popeck Request Discretionary Pre-Judgment Interest.

Counter-Claimants Caramel Sales and Popeck request that this Court use its discretionary authority to grant prejudgment interest under California Code of Civil Procedure § 3287(b) from the date the lawsuit was commenced by the Cross-Defendants on September 20, 2018. Dkt. 1. "The primary purpose of prejudgment interest is to provide just compensation to the injured party for the loss of use of money during the prejudgment period, and thus to make that party whole as of the date of the injury." *Ferrellgas, Inc. v. American Premier Underwriters, Inc.*, 79 F. Supp. 2d 1160, 1163 (C.D. Cal. 1999). Caramel Sales and Popeck suffered the loss of use of their money as a result of not receiving the goods they contract for or a return of their payments.

Thus, from September 20, 2018 to October 25, 2021, the amount of prejudgment of $534,542.85, based on 10% simple interest, is **$165,635.06**.

///

**III.**

**CONCLUSION**

For the reasons stated above, the Counter-Claimants respectfully submit that they should be granted their Motion and that this Court award them:

**FOR ALL COUNTER-CLAIMANTS AND AGAINST ALL COUNTER-DEFENDANTS:**

| | |
|---|---|
| General and Compensatory Damages: | $1,313,242.50 |
| Consequential Damages: | $4,703,020.40 |
| Punitive Damages | $ |
| Treble Damages Under Federal RICO Act | $18,048,788.70 |
| (or, in the alternative, as Punitive Damages) | |
| Attorneys' Fees | $464,988.00 |
| Prejudgment Interest: | $548,683.56 |
| Unpaid Litigation Sanctions: | $40,866.00 |
| **TOTAL REQUESTED** | **$ 25,119,589.16** |

**FOR COUNTER-CLAIMANTS CARAMEL SALES AND POPECK AND AGAINST ALL COUNTER-DEFENDANTS:**

| | |
|---|---|
| General and Compensatory Damages: | $    534,542.85 |
| Prejudgment Interest: | $    165,635.06 |
| **TOTAL REQUESTED** | **$    700,177.91** |

DATED: September 24, 2021          QUINTANA LAW GROUP
                                                        A Professional Law Corporation


                                                        By: /s/ Andres F. Quintana
                                                              Andres F. Quintana, Esq.
                                                              Attorneys For Defendants and Counter-Claimants TET ApS, Thomas Schmidt, Caramel Sales, Ltd. and David Popeck

1

### **PROOF OF SERVICE**

2

STATE OF CALIFORNIA               )

3                                                        ) ss:

COUNTY OF LOS ANGELES         )

4

5          I am employed in the County of Los Angeles, State of California.  I am over

the age of eighteen (18) years and not a party to the within action.  My business

6      address is 5627 Kanan Road, Suite 182, Agoura Hills, California 91301

7      On September 24, 2021, I served the document described as DEFENDANTS AND

COUNTERCLAIMANTS' NOTICE OF MOTION AND MOTION FOR FINAL

8      JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES on counsel

for the parties in this action, or on the parties in propria persona, addressed as stated

9      on the attached service list:

10

11     [X]     BY CM/ECF ELECTRONIC FILING: I caused the above document(s) to be

12              transmitted to the office(s) of the addressee(s) listed above by electronic mail

at the e-mail address(es) set forth above pursuant to Fed.R.Civ.P.5(d)(1). "A

13              Notice of Electronic Filing (NEF) is generated automatically by the ECF

14              system upon completion of an electronic filing. The NEF, when e-mailed to

the e-mail address of record in the case, shall constitute the proof of service as

15              required by Fed.R.Civ.P.5(d)(1). A copy of the NEF shall be attached to any

16              document served in the traditional manner upon any party appearing pro se."

17

18     [X]     (FEDERAL) I declare that I am employed in the office of a member of the

bar of this Court at whose direction the service was made.

19

EXECUTED on September 24, 2021 at Agoura Hills, California.

20

21

22                                                              */s/ Andres F. Quintana*

23                                                              _____

Andres F. Quintana

24

25

26

27

28